IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TONYA COLLIER, | ) | |
| | ) | |
| DONALD LEE ALEXANDER, | ) | |
| | ) | |
| GINGER LOWREY, | ) | |
| | ) | |
| R.L.P., *a minor who sues by his mother and next friend*, L.S.M., | ) | |
| | ) | |
| BRIAN BURROUGHS, and | ) | |
| | ) | |
| MARLO SAUNDERS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:15-CV-256-WKW |
| | ) | (WO) |
| NANCY BUCKNER, *in her individual capacity and in her official capacity as Commissioner of the Alabama Department of Human Resources*, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| KIM MASHEGO, *in her individual capacity and in her official capacity as Director of the Shelby Department of Human Resources*, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| CORRINE MATT, *in her individual capacity*, | ) | |
| | ) | |
| | ) | |
| LESLIE HENDERSON, *in her individual capacity*, | ) | |
| | ) | |
| | ) | |
| SARA HAAG, *in her individual capacity*, | ) | |
| | ) | |

KATIE WALTER, *in her individual* )
*capacity*, and )
  )
TONI DOLLAR, *in her individual* )
*capacity and in her official capacity as* )
*a supervisor for the Jefferson County* )
*Department of Human Resources*, )
  )
           Defendants. )

## <u>MEMORANDUM OPINION AND ORDER</u>

## I.   INTRODUCTION

Plaintiffs Tonya Collier, Donald Lee Alexander, Ginger Lowrey, R.L.P., Brian Burroughs, and Marlo Saunders allege that Alabama Department of Human Resources ("DHR") officials deprived them of procedural due process in violation of 42 U.S.C. § 1983 and committed several state law torts.  Plaintiffs' claims arise out of DHR placing their names on a Central Registry that catalogues the outcome of child abuse allegations, disclosing information from the Central Registry to third parties, and failing to provide Plaintiffs with due process hearings to challenge the information on the Central Registry.  Before the court is Defendants' motion to dismiss (Doc. # 31), which is due to be granted in part and denied in part.

## II.   INDEX

This Memorandum Opinion is necessarily lengthy for three reasons: less than stellar pleading, less than stellar briefing by all parties on the motion to dismiss, and unduly complicated applicable law.  The last reason is likely a partial

cause of the first two.

The claims of the six Plaintiffs share some legal and factual issues and concern some of the same Defendants. However, not all Plaintiffs assert claims that arise out of the same transactions and occurrences, and, in many instances, not all Plaintiffs' claims are subject to the same legal standards. Not all of the seven Defendants are implicated in every claim of every Plaintiff. Some defenses apply to multiple counts in the amended complaint; some counts in the amended complaint are the target of multiple defenses; and some defenses are pertinent to only some Defendants.

To avoid the impossible exponential burden of considering each defense in the context of each relevant claim by each relevant Plaintiff against each relevant Defendant, the court limited its analysis by first determining which claims survive the most broadly applicable defenses, then considering more narrowly applicable defenses only with respect to claims that survived the broader analysis. Further, the court considered only defenses to claims that had not already been eliminated at an earlier point in the analysis. As a result, many of Defendants' numerous defenses are not discussed in this Memorandum Opinion because they pertain to claims that are due to be dismissed on other grounds.

To aid the reader, the following index is provided:

I.      INTRODUCTION — 2

II.     INDEX — 2

III.    JURISDICTION AND VENUE — 7

IV.     STANDARD OF REVIEW — 7

A.      Rules 8(a) and 10(b) of the Federal Rules of Civil Procedure — 7

B.      Motion to Dismiss for Failure to State a Claim — 8

V.      LEGAL CONTEXT — 9

III.    FACTS — 15

A.      Plaintiff Tonya Collier, a Teacher and Day Care Worker — 15

B.      Plaintiffs Donald Lee Alexander, Ginger Lowrey, and R.L.P.: Non-educator Plaintiffs With "Indicated" Dispositions — 18

        1.      *Plaintiff Alexander's "Indicated" Disposition* —19

        2.      *Plaintiff Lowrey's "Indicated" Disposition* — 20

        3.      *Plaintiff R.L.P.'s "Indicated" Disposition* — 21

C.      Plaintiffs Alexander, Brian Burroughs, and Marlo Saunders: Non-educator Plaintiffs With "Not Indicated" Dispositions — 22

IV.     DISCUSSION — 24

A.      The Amended Complaint — 24

B.      Jurisdictional Considerations: Mootness, Standing, and Ripeness — 25

        1.      *Mootness: Plaintiff Collier* — 25

4

2.     *Jurisdictional Issues Concerning Claims Arising From "Indicated" Dispositions of Non-educator Plaintiffs Alexander, Lowrey, and R.L.P. — 27*

i.     *Claims for Monetary Damages Connected with "Indicated" Dispositions of Non-educator Plaintiffs Alexander, Lowrey, and R.L.P. — 27*

ii.    *Claims for Prospective Relief of Plaintiffs Alexander and Lowrey Against Defendants Haag, Walter, and Dollar With Respect to "Indicated" Dispositions — 28*

iii.   *Claims for Prospective Relief Against Defendants Buckner and Mashego with Respect to "Indicated" Dispositions of Plaintiffs Alexander, Lowrey, and R.L.P.- Constitutional (Article III) Standing — 30*

iv.    *Claims for Prospective Relief Against Defendants Buckner and Mashego with Respect to "Indicated" Dispositions of Plaintiffs Alexander and R.L.P.- Prudential Standing — 39*

3.     *Standing as to Plaintiffs with "Not Indicated" Statuses: Plaintiffs Alexander, Burroughs, and Saunders — 43*

C.     Res Judicata/Collateral Estoppel: Plaintiff Lowrey's Remaining Claims — 44

D.     Statute of Limitations: Plaintiff Collier's Claims for Monetary Relief and Plaintiff R.L.P.'s Claim for Prospective Relief — 47

1.     *Plaintiff Collier's Claims for Monetary Relief — 47*

2.     *Plaintiff R.L.P. — 51*

E.     Count I — 53

F.     Count II — 54

G.     Count III — 56

1.     *Policy of Refusal to Schedule Hearings Upon Request; Policy*

*Resulting in Failure to Forward Hearing Requests to the Office of Administrative Hearings* — 57

a.     *Plaintiffs Alexander and R.L.P.* — 58

i.     *What Process is Due* — 58

ii.     *Whether Plaintiffs Alexander and R.L.P. Allege Injury to a Constitutionally Protected Interest* — 62

b.     *Plaintiff Collier* — 66

i.     *What Process is Due* — 66

ii.     *Supervisor Liability of Defendants Buckner and Mashego* — 68

2.     *Policy of Informing Those Requesting Hearings that They Are Only Entitled to a Record Review; Policy of Failing to Provide Information Regarding Methods For Challenging DHR Findings* — 70

3.     *Introduction of Evidence of Dispositions in Juvenile and Family Courts* — 71

4.     *Failure to Establish Adequate Expungement Procedures* — 72

5.     *Failure to Provide Adequate Training and Supervision in Investigation and Intitial Dispositions of Child Abuse Reports* — 72

6.     *Failure of DHR Social Workers to Forward Hearing Requests* — 74

H.     <u>Count IV</u> — 75

I.     <u>Qualified Immunity and Plaintiff Collier's § 1983 Claims for Monetary Relief</u> — 77

J.     <u>Count V- State Law Negligence and Wantonness Claims</u> — 82

K.     <u>Count VI</u> — 88

L.     <u>Count VII</u> — 88

M.  Counts VIII and IX — 92

N.  Count X — 93

V.  CONCLUSION — 96

## III.  JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1367. Personal jurisdiction and venue are not contested.

## IV.  STANDARD OF REVIEW

### A.  **Rules 8(a) and 10(b) of the Federal Rules of Civil Procedure**

"[T]he district court's inherent authority to control its docket and ensure the prompt resolution of lawsuits . . . in some circumstances includes the power to dismiss a complaint for failure to comply with Rule 8(a)(2) and Rule 10(b)" of the Federal Rules of Civil Procedure. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). In exercising that discretion, the court is mindful of the overarching principle that "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e).

Pursuant to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 10(b) requires the following:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A

later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

Fed. R. Civ. P. 10(b).

Rules 8(a) and 10(b) are not intended to serve as a difficult hurdle requiring pleading perfection. Instead, they impose a minimum, common sense drafting requirement. A complaint must simply be sufficiently

"discrete[ ] and succinct[ ] so that [the defendant] can discern what [the plaintiff] is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not."

*Weiland*, 792 F.3d at 1320 (quoting *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544 n.14 (11th Cir. 1985) (Tjoflat, J., dissenting)).

## B.    <u>Motion to Dismiss for Failure to State a Claim</u>

When evaluating a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

## V.    LEGAL CONTEXT

With certain exceptions not applicable in this case, DHR is the state agency in Alabama responsible for investigation of all reports of suspected child abuse and neglect.   Ala. Code § 26-14-6.1.   Pursuant to its statutory authority, DHR has propounded regulations and established procedures for investigation and disposition of child abuse reports and for review, recording, and disclosure of the outcome of child abuse investigations.  Ala. Code § 26-14-12; Ala. Admin. Code r. 660-34-.01, *et seq.*

"Once a report of suspected child abuse/neglect has been received, it must be investigated."[1]  Ala. Admin. Code r. 660-5-34-.04(3).  Upon receipt of a report of child abuse or neglect, the state or county DHR  promptly begins an investigation, which includes research into previous reports, home visits, interviews with the child and custodial parents, and so forth.  Ala. Code 1975 § 26-14-7; Ala. Admin. Code r. 660-5-34-05.   DHR also evaluates the safety of the alleged victim and other children living in the home and determines whether a safety plan is needed or

---

[1] "[T]he investigation is known by DHR as the child abuse/neglect child abuse neglect [sic] (CA/N) assessment."   Ala. Admin. Code r. 660-5-34-.04(3).  For clarity, the term "CA/N assessment" is avoided whenever possible in this opinion.

whether, in extreme circumstances, the child or children should be removed from the home prior to completion of the investigation. Ala. Admin. Code r. 660-5-34-.06.

After completing the investigation, the investigating DHR social worker reaches a disposition as to whether the child experienced abuse or neglect and the identity of the person responsible for the abuse or neglect. Ala. Admin. Code r. 660-5-34-.06. The worker assigns one of the following dispositions to the report of abuse and to the person alleged to be responsible for the abuse: (1) "Indicated," which means that "a preponderance of the credible evidence . . . and the professional judgment of the worker indicate that abuse/neglect has occurred;" (2) "Unable to Complete;" or (3) "Not Indicated," which means that "a preponderance of the credible evidence and professional judgment does not substantiate that abuse/neglect has occurred." Ala. Admin. Code r. 660-5-34-.07; *see also* Ala. Code 1975 § 26-14-8 (defining "indicated" and "not indicated").

The county DHR submits a complete written report of the investigation and disposition to DHR's statewide Central Registry for reports of child abuse and neglect. Ala. Code 1975 § 26-14-7(d); Ala. Code 1975 § 26-14-8; Ala. Admin. Code r. 660-5-34-.09. Cases in which child abuse or neglect has been determined

to be "not indicated" are listed on the Central Registry without further ado.[2] Ala. Code 1975 § 26-14-7.1; Ala. Admin. Code r. 660-5-34-.09. A "not indicated" disposition "shall not be used or disclosed for purposes of employment or other background checks." Ala. Code § 26-14-8(c)(1).

All persons who have been assigned an "indicated" disposition are given an opportunity to disagree with DHR's findings "through either a CA/N hearing or an administrative record review." Ala. Admin. Code r. 660-5-34-.08(1), (4). Some individuals qualify for a CA/N hearing based on the nature of their employment; the rest qualify only for administrative record review. Ala. Admin. Code r. 660-5-34-.08(4). The accused is afforded ten DHR working days from receipt of the notice to submit a written request for either a CA/N hearing or an administrative record review, whichever of the two is available to that person. Ala. Admin. Code r. 660-5-34-.08(4). If DHR receives no written request for review by the end of the ten-day period, the accused is considered to have waived review, and the "indicated" disposition is entered on the Central Registry. *Id*. Once an "indicated" disposition is entered on the Central Registry, it is confidential, but it may be released under certain circumstances to employers, prospective employers, licensing and certifying agencies, *etc*. Ala. Code 1975 § 26-14-8; Ala. Admin.

---

[2] Of the six Plaintiffs, Plaintiffs Alexander (who was the subject of both an "indicated" and a "not indicated" listing), Burroughs, and Saunders bring claims challenging the inclusion of their "not indicated" listings on the Central Registry.

Code r. 660-5-34-.08(4); Ala. Admin. Code r. 660-5-34-.09.

Only certain persons—for example, those certified to care for children, such as teachers and educators, and those employed by certified child care facilities, such as day care workers—are entitled to a CA/N hearing.[3]  A CA/N hearing is "an internal investigatory hearing that is fact finding in nature and designed to elicit the facts in an atmosphere that allows the person responsible for the abuse/neglect to contest the evidence presented against him [or her]."  Ala. Admin. Code r. 660-5-34-.08(6); *see also* Ala. Code 1975 § 26-14-7.1 (providing due process rights for certain persons (such as educators) who have come under DHR investigation for child abuse or neglect).  DHR bears the burden of persuasion at the CA/N hearing. Ala. Code 1975 § 26-14-7.1; Ala. Admin. Code r. 660-5-34-.08(6).  At a CA/N hearing, the accused has the following rights:

a.    The right to present his case himself or be represented by legal counsel or any other person.

b.    The right to present written evidence, oral testimony, and witnesses.

c.    The right to be provided by the department a short and plain written statement of the matters asserted which will be presented at the hearing.

d.    The right to review and copy at cost any written or recorded statement made by the alleged perpetrator to departmental personnel in the course of the child abuse/neglect investigation.

---

[3] Of the six plaintiffs, only Plaintiff Collier qualified for a CA/N hearing under Alabama law and DHR regulations and procedures.

This request must be made prior to the date for the hearing.

e.    The right to review and copy at cost, before or during the hearing, the written material and other evidence in possession of the department which will be placed into evidence at the hearing.

f.    The right to inspect any exculpatory evidence which may be in the possession of departmental investigators, and the right to be informed of such evidence if known by departmental investigators before the hearing; provided, that a request for such evidence is made at least five working days prior to the date set for the hearing.

g.    The right to review and copy at cost all non-confidential department documents pertinent to the case, including written policies and rights.

h.    The right to cross-examine witnesses testifying at the hearing.

i.    The right to request issuance of subpoenas to witnesses and compel attendance. This request must be received no later than ten calendar days prior to the hearing, unless a shorter time is agreed upon by the hearing officer.

j.    The right to review and copy at cost all documents in the official hearing file maintained by the hearing officer.

k.    The right to have a hearing officer appointed who shall be disinterested, fair, and impartial.

Ala. Code 1975 § 26-14-7.1.

For the majority of Alabama citizens (everyone who is not a teacher, day care worker, or other person who falls within the narrow qualifications for entitlement to a CA/N hearing), only an administrative record review is available

to challenge an "indicated" disposition.[4]  Ala. Admin. Code r. 660-5-34-.08(3)-(4).

Unlike a CA/N hearing, which is "fact finding in nature" and allows the accused to directly challenge the "indicated" disposition using evidence outside the administrative record, an administrative record review is limited to consideration of whether the DHR's own administrative record "contains sufficient documentation based on a preponderance of credible evidence to support the 'indicated' disposition of child abuse/neglect." Ala. Admin. Code r. 660-5-34-.08(3).  Although the reviewer may consider prior abuse/neglect reports, the court has not found, and the parties have not cited, any specific law, regulation, or policy that would, during a record review, allow the accused to be presented with the evidence against him or her, or to contest the "indicated" listing by presenting his or her own evidence or argument.  "Administrative record reviews are conducted by [DHR] staff who are not involved with the case."  Ala. Admin. Code r. 660-5-34-.08(7).  "The [administrative record] reviewers have the authority to overturn the dispositional finding of the worker and supervisor, *and their decision is final*." Ala. Admin. Code r. 660-5-34-.08(7) (emphasis added).

After the conclusion of the CA/N hearing or administrative record review, there are no further procedures available for challenging the merits of an

---

[4] Of the six Plaintiffs, only Plaintiffs Alexander (who was the subject of both an "indicated" and a "not indicated" listing), Lowrey, and R.L.P. qualified for an administrative record review to challenge an "indicated" finding.

"indicated" disposition. Limited procedures are available, however, for expungement from the Central Registry of "not indicated" and (in narrower circumstances) "indicated" listings. Ala. Code § 26-14-8(e) (providing for expungement of "not indicated" listings upon request if, after five years after placing the listing on the Central Registry, DHR has received no further reports of child abuse or neglect); Ala. Admin. Code r. 660-5-34-.09(5)(i)-(j) (procedures for expungement of "indicated" and "not indicated" listings); *see also* Ala. Code § 26-14-3(e) ("[I]f any agency or authority investigates any report pursuant to this section [pertaining to reports by mandatory reporters] and the report does not result in a conviction, the agency or authority shall expunge any record of the information or report and any data developed from the record."); *Slaton v. State*, 71 So. 3d 659, 661 (Ala. Civ. App. 2011) (holding that § 26-14-3(e) applied to the investigatory record of DHR because DHR was "the agency or authority that investigated an allegation" of child sex abuse).

## III.  FACTS

### A.  <u>Plaintiff Tonya Collier, a Teacher and Day Care Worker</u>

Plaintiff Tonya Collier is a former educator who resides in Shelby County, Alabama. Plaintiff Collier alleges that DHR officials and social workers wrongfully deprived her of procedural due process in violation of 42 U.S.C. § 1983 and committed several state law torts in conjunction with disclosing an "indicated"

disposition from DHR's Central Registry without affording her a due process hearing. Because of the nature of Plaintiff Collier's employment at the time DHR assigned an "indicated" disposition to her case, she is the only Plaintiff who, under existing Alabama law and DHR rules and regulations,[5] was entitled to a CA/N investigative administrative hearing to challenge the "indicated" disposition before DHR disclosed the "indicated" disposition to her employers.

By letter dated April 17, 2012, DHR notified Plaintiff Collier that a report of child abuse had been lodged against her and that, upon investigation, DHR had concluded that the facts indicated child abuse had occurred. (Doc. # 28 ¶ 1, 21.) Defendants Corrine Matt and Leslie Henderson were the Shelby County DHR workers who made the "indicated" determination. (Doc. # 28 ¶ 3.)

On April 24, 2012, in response to DHR's letter, Plaintiff Collier notified Defendants Matt and Henderson of her status as a school teacher and requested a hearing to review the "indicated" disposition. (Doc. # 28 ¶ 2; Doc. # 33-1 at 10.) Plaintiff Collier's hearing request was ignored or denied. (Doc. # 28 ¶¶ 16-17.) On November 29, 2012, DHR notified Plaintiff Collier that an administrative record review had resulted in an affirmance of the "indicated" disposition and that the "indicated" status would be placed on the Central Registry. (Doc. # 33-1 at 10; Doc. # 31-4 at 1.)

---

[5] Ala. Code 1975 § 26-14-7.1; Ala. Admin. Code r. 660-5-34-.08.

"At the time the 'indicated' disposition was made by Defendants Matt and Henderson," *i.e.*, sometime in 2012, Plaintiff Collier was terminated from her teaching position after the "indicated" disposition was disclosed to her employer. (Doc. # 28 ¶ 3.)  Plaintiff Collier subsequently obtained employment at a day care center, but, in October 2014, she was terminated from that position after DHR notified the day care of the "indicated" disposition and warned that the day care's license to operate was in jeopardy because of it.  (Doc. # 28 ¶ 3.)

Thereafter, Plaintiff Collier retained an attorney, who secured her an administrative hearing approximately one month after she filed this action.  (Doc. # 33-1 (May 12, 2015 letter from the Administrative Hearings Office notifying Plaintiff Collier that she would be given a hearing).)  At the conclusion of the hearing, the administrative law judge reversed the "indicated" finding and concluded that child abuse was "not indicated."[6]  (Doc. # 28 ¶ 4.)

---

[6] The following information is gleaned from the opinion of the ALJ (Doc. # 33-1): Plaintiff Collier was accused of allowing her children to be in the presence of her (now former) husband, who was had a history of child abuse, and of refusing to sign a safety plan.  At the administrative hearing, DHR's evidence primarily consisted of some notes that Defendant Matt made about the notes of the investigating social worker, Lori Baxley.  Ms. Baxley's notes had been destroyed prior to the hearing.  Ms. Baxley was terminated during the pendency of the Collier investigation for mishandling her cases, and she did not testify at the hearing.  Defendant Matt was not assigned to the Collier case until three weeks after the children had been removed from Plaintiff Collier's custody.  Thus, DHR's evidence of the events leading up to the custody removal consisted of Defendant Matt's secondhand notes about Ms. Baxley's destroyed notes, which Ms. Baxley's supervisor testified were "not consistent" with other documents in the record.

Contrary to Defendant Matt's recorded observations of Ms. Baxley's notes, Plaintiff Collier's signature was on the safety plan.  Further, other than Defendant Matt's recorded observations of Ms. Baxley's "inconsistent" notes, all documents in the DHR record and all other

## B.     Plaintiffs Donald Lee Alexander, Ginger Lowrey, and R.L.P.: Non-educator Plaintiffs With "Indicated" Dispositions

Plaintiffs Donald Lee Alexander, Ginger Lowrey, and R.L.P. allege that DHR officials deprived them of procedural due process in violation of 42 U.S.C. § 1983 and committed several state law torts in conjunction with placing a final "indicated" disposition on DHR's Central Registry of "indicated" child abusers without affording them a due process hearing. Unlike Plaintiff Collier, Plaintiffs Alexander (who was the subject of both an "indicated" and a "not indicated" listing), Lowrey, and R.L.P. were not employed as teachers or in other jobs that qualified them for an administrative CA/N hearing. Instead, under Alabama law and DHR regulations and policies, they qualified only for an administrative record review to challenge their "indicated" dispositions. Ala. Admin. Code r. 660-5-34-.08(3)-(4), (7).

---

evidence demonstrated that, as soon as Plaintiff Collier discovered that her husband had a history of child abuse, she required him to move out of the house and did not allow him to be in the presence of the children again, and she complied with all instructions from DHR. According to the evidence presented at the administrative hearing, the only time the children were in the husband's vicinity after Plaintiff Collier learned of her husband's history of child abuse was when Plaintiff Collier was summoned to bring the children from church to her home, where police were present while the husband was removing his belongings, so that DHR could take custody of the children. (Doc. # 33-1 at 7-22.)

The facts presented in this footnote are solely for placing the factual and legal background in context. Although these facts serve as a real-life illustration of the necessity and importance of the constitution's due process requirements for review of an "indicated" disposition, they are not derived from the allegations of the complaint and are not the basis for any finding or ruling in this Memorandum Opinion.

### 1.   *Plaintiff Alexander's "Indicated" Disposition*

Plaintiff Alexander, a Shelby County, Alabama resident and the father of two minor children, was the subject of a DHR investigation in which DHR's investigators found that child abuse was "indicated."[7]   (Doc. # 28 at ¶¶ 5, 28.) Plaintiff Alexander was never notified of any right to a hearing to dispute the report or the "indicated" disposition by introducing evidence or argument.  (Doc. # 28 ¶ 5.)  However, the April 2, 2014 DHR letter notifying Plaintiff Alexander of the "indicated" disposition stated:  "You have the right to an administrative record review." (Doc. # 28 at ¶¶ 29-30.)  The letter was signed by Sara Haag, a Shelby County DHR social worker, and ratified by Defendant Kim Mashego, Director of Shelby County DHR.  (Doc. # 28 at ¶ 30.)

In response to DHR's letter, Plaintiff Alexander submitted to DHR a written notice that he "denied and disputed the report, the allegations, and the 'indicated[']' disposition" and that he wanted to proceed to a hearing to contest the "indicated" disposition.   (Doc. # 28 at ¶ 31.)   He submitted his request for a hearing to Defendant Haag, who did not forward the request to DHR's Office of Administrative Hearings.  (Doc. # 28 ¶ 18.)  No hearing was scheduled.  (Doc. # 28 ¶ 18.)   Alexander's name continues to be listed on the Central Registry as the

---

[7] DHR investigated two child abuse reports with respect to Plaintiff Alexander.  As to one of the reports, DHR concluded that child abuse was "not indicated"; as to the other, DHR concluded that child abuse was "indicated."

subject of a DHR investigation in which child abuse was "indicated." (Doc. # 28 at 31.) Because of the "indicated" disposition, Alexander is unable to pursue normal activities available to other parents, such as volunteering and being involved in his children's educational and extracurricular activities. (Doc. # 28 at ¶ 35.)

## 2. *Plaintiff Lowrey's "Indicated" Disposition*

Plaintiff Ginger Lowrey, the mother of two minor children, resides in Jefferson County, Alabama. She was the subject of a DHR investigation of child abuse that led to a finding that child abuse was "indicated." (Doc. # 28 at ¶ 8.) Plaintiff Lowrey was never notified of her right to a hearing to challenge DHR's findings by introducing evidence or argument. (Doc. # 28 at ¶ 19.) However, the September 7, 2007 DHR letter notifying Plaintiff Lowrey of the "indicated" disposition stated: "You have the right to an administrative record review." (Doc. # 28 at ¶ 42.) The letter was signed by Defendant Katie Walter, a Jefferson County DHR social worker, and Defendant Toni Dollar, a Jefferson County DHR supervisor. (Doc. # 28 at ¶ 42.)

Plaintiff Lowrey notified DHR that she denied and disputed the child abuse allegations and the "indicated" disposition and submitted a written request for a hearing. (Doc. # 28 at ¶ 44.) The hearing request was not forwarded to DHR's Office of Administrative Hearings. (Doc. # 28 ¶ 45.) No hearing was scheduled,

and Plaintiff Lowrey remains on the Central Registry as the subject of a DHR investigation in which child abuse was "indicated."  Plaintiff Lowrey wishes to be active in the lives of her children, but, unlike other parents, she is prohibited from volunteering in their school and other activities because of the "indicated" disposition.  (Doc. # 28 at ¶¶ 47, 50.)

### 3. *Plaintiff R.L.P.'s "Indicated" Disposition*

Plaintiff R.L.P., a minor[8] resident of Shelby County, Alabama, was the subject of a child abuse investigation that led to a finding of "indicated" child abuse.  (Doc. # 28 at ¶ 10.)  Plaintiff R.L.P. was never notified of any right to dispute the report or the "indicated" disposition by introducing evidence or argument, or of the procedures by which he might pursue that challenge.  (Doc. # 28 ¶ 10.)  However, the June 1, 2012 DHR letter notifying Plaintiff R.L.P. of the "indicated" disposition stated: "You have the right to an administrative record review." (Doc. # 28 at ¶¶ 55, 57.)

The amended complaint does not state whether Plaintiff R.L.P. or his parents notified DHR that they wished to challenge the "indicated" disposition, or whether

---

[8] R.L.P.'s age is not stated in the amended complaint.  However, the court notes that R.L.P. had to have been at least 14 years of age at the time DHR sent its August 10, 2013 letter (Doc. # 31-6) notifying him that the "indicated" disposition would be placed on the Central Registry.  *See* Ala. Admin. Code r. 660-5-34-.04 ("[A] person allegedly responsible for abuse/neglect is defined as a person fourteen years of age or older. No child under the age of fourteen will be listed on a child abuse/neglect report as responsible for abuse/neglect.").  Because R.L.P. was still a minor under Alabama law when this action was filed in April 2015, and because he was already at least 14 in August 2013, he must have been between no younger than 16 and no older than 18 when this case was originally filed.

R.L.P. was afforded an administrative record review.  However, in support of their motion to dismiss, Defendants submitted a letter dated April 16, 2013, informing R.L.P. that DHR had "completed [its] administrative record review" on R.L.P.'s case and had "determined that the County Department does have enough credible evidence to support a dispositional finding of 'indicated', *i.e.* true."  (Doc. # 31-6 at 1.)  In the letter, DHR notified that the report of child abuse involving R.L.P. would "be entered on the Department's Central Registry . . . as an 'indicated' incident."  (Doc. # 31-6 at 1.)

Plaintiff R.L.P. continues to be listed on the Central Registry as the subject of a DHR investigation in which child abuse was "indicated."  Plaintiff R.L.P. wishes to one day have children, but, if he does, disclosure of the "indicated" status likely will prohibit him from volunteering and participating in his children's school and extracurricular activities the way other parents do.  (Doc. # 28 at ¶¶ 60-61.)  In addition, Plaintiff R.L.P. is concerned that disclosure will hinder his ability to obtain employment and engage in an occupation.  (Doc. # 28 at ¶ 61.)

## C.  Plaintiffs Alexander, Brian Burroughs, and Marlo Saunders: Non-educator Plaintiffs With "Not Indicated" Dispositions

Plaintiffs Alexander,[9] Brian Burroughs, and Marlo Saunders are each listed on the statewide Central Registry as the subject of child abuse investigation that

---

[9] As noted, *supra*, DHR investigated two child abuse reports with respect to Plaintiff Alexander.  As to one of the reports, DHR concluded that child abuse was "not indicated"; as to the other, DHR concluded that child abuse was "indicated."

led to a "not indicated" disposition. (Doc. # 28 at ¶¶ 7, 12, 13.) Alabama law and DHR regulations and policies do not include any provisions for hearings or record reviews to challenge a "not indicated" disposition before the disposition is included on the Central Registry. Alabama law and DHR regulations do provide, however, for expungement of "not indicated" listings upon request if, after five years after placing the listing on the Central Registry, DHR has received no further reports of child abuse or neglect. Ala. Code § 26-14-8(e); Ala. Admin. Code r. 660-5-34-.09(5)(i)-(j).

A "not indicated" disposition "shall not be used or disclosed for purposes of employment or other background checks." Ala. Code § 26-14-8(c)(1). Nevertheless, Plaintiffs Alexander, Burroughs, and Saunders are concerned that their "not indicated" dispositions and the underlying allegations of child abuse might one day be disclosed, thus subjecting them to scorn and public humiliation and hindering their ability to pursue "goals and activities that are available to the citizens of the State of Alabama." (Doc. # 28 at ¶¶ 7, 12, 13.) They allege that there is no constitutionally adequate process by which they can seek removal of the "not indicated" status from the Central Registry. They do not allege, however, any facts from which it could be reasonably inferred that they ever unsuccessfully requested expungement of their "not indicated" dispositions under existing Alabama law and regulations. Apart from conclusory legal statements, they also

do not allege facts supporting an inference that the existing expungement procedures are constitutionally deficient.

## IV. DISCUSSION

### A. <u>The Amended Complaint</u>

Plaintiffs previously were granted an opportunity to amend the complaint to cure problems of shotgun pleading. (Doc. # 27.) In the order to amend, they were given detailed instructions on how to file a proper complaint. (Doc. # 27.) Plaintiffs were expressly warned that "[c]laims and demands for relief that fail to comply with the Federal Rules of Civil Procedure and the requirements of [the order to amend] may be subject to dismissal without further opportunities for amendment." (Doc. # 27 at 11.) Claims over which the court has jurisdiction that fail to comply sufficiently with the order to amend to meet the basic notice pleading requirements of Fed. R. Civ. P. 8(a) will be dismissed with prejudice and without further opportunity to amend, as no grounds exist for finding that further opportunities for amendment would be fruitful.[10]  *See Zocaras v. Castro*, 465 F.3d

_____

[10]  Having already provided Plaintiffs an opportunity to remedy the errors of shotgun pleading, the court finds that dismissing noncompliant claims with prejudice is necessary to enforce the court's orders and to ensure that this case may proceed efficiently. In light of Plaintiffs' failure to comply with certain requirements of notice pleading already explained in the court's previous instructions, the court finds that remedies short of dismissal would be insufficient to enforce the order to amend. "Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." *Anderson v. Dist. Bd. of Trustees of Cent. Florida Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996). Thus, "it is particularly important for district courts to undertake the

479, 483 (11th Cir. 2006) (noting that "a court . . . has the inherent ability to dismiss a claim in light of its authority to enforce its orders and provide for the efficient disposition of litigation"); *Etkin & Co., v. SBD, LLC*, No. 11-21321-CIV, 2015 WL 11714357, at *5 (S.D. Fla. Sept. 1, 2015) (dismissing amended claims with prejudice for failure to comply with the basic requirements of notice pleading and failure to comply with prior orders regarding noncompliant complaints).

## B.   Jurisdictional Considerations: Mootness, Standing, and Ripeness

### 1.   *Mootness: Plaintiff Collier*

After initially being denied a hearing, and after twice losing her employment as a result of DHR's two disclosures of her "indicated" status, Plaintiff Collier was provided a hearing in which she successfully challenged her "indicated" status, which was then changed to a "not indicated" status on the Central Registry.[11] (Doc. # 28 at 4.)   Plaintiff Collier seeks damages, as well as injunctive and declaratory relief, based on the denial of a hearing to challenge the "indicated" disposition.

Because Plaintiff Collier is no longer under threat of future injury from the

difficult, but essential, task of attempting to narrow and define the issues from the earliest stages of the litigation. Absent such efforts, shotgun notice pleadings . . . would impede the orderly, efficient, and economic disposition of disputes." *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 165 (11th Cir. 1997).

[11] Plaintiff Collier also alleges that "there is no process by which she can seek removal or expungement of the ['not indicated'] listing." (Doc. # 28 at ¶ 4.)  However, as a matter of law, a process does exist by which she can seek removal of the "not indicated" listing.  *See* Ala. Code § 26-14-8 (providing for expungement of "not indicated" statuses).

"indicated" status, her claims for injunctive and declaratory relief (but not her claims for damages incurred as a result of termination of her employment) are due to be dismissed without prejudice for lack of jurisdiction on grounds that her claims for prospective relief are moot. *Adler v. Duval Cty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997) ("Equitable relief is a prospective remedy, intended to prevent future injuries. In contrast, a claim for money damages looks back in time and is intended to redress a past injury. . . . When the threat of future harm dissipates, the plaintiff's claims for equitable relief become moot because the plaintiff no longer needs protection from future injury."); *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (holding that claims for injunctive relief were moot on grounds that "[p]ast exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury or real and immediate threat of repeated injury"); *see also Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater*, 777 F.2d 598, 604 (11th Cir. 1985) (noting that the jurisdictional limits of Article III of the Constitution exclude cases that are moot).

Plaintiff Collier's claims for monetary damages for loss of employment, however, arise out Defendants' past conduct in disclosing her "indicated" statuses to two of her employers. Therefore, Plaintiff Collier's claims for monetary damages are not moot. *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1220 (11th Cir.

2016) (holding, even though Defendants had already agreed to allow Plaintiffs to remain in their apartment, claims for compensatory damages arising out of a discriminatory eviction notice were not moot because compensatory damages arose out of Defendants' past conduct, not out of a threat of future harmful conduct).

### 2. *Jurisdictional Issues Concerning Claims Arising From "Indicated" Dispositions of Non-educator Plaintiffs Alexander, Lowrey, and R.L.P.*

#### i. *Claims for Monetary Damages Connected with "Indicated" Dispositions of Non-educator Plaintiffs Alexander, Lowrey, and R.L.P.*

Standing, like the related concepts of mootness and ripeness, is a concept of justiciability that consists of constitutional (jurisdictional) elements and prudential elements. To establish standing in the context of Article III, a plaintiff must allege an (1) "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) that the injury is "fairly traceable" to the challenged act; and (3) that it is "likely, as opposed to merely speculative" that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations and internal quotation marks omitted).

Plaintiffs Alexander, Lowrey, and R.L.P. seek monetary damages from Defendants Buckner, Mashego, Haag, Walter, and Dollar in their individual capacities on grounds that those Defendants are in various ways responsible for the

denial of a hearing to challenge their "indicated" statuses. Unlike Plaintiff Collier, who lost two jobs in conjunction with disclosure of her "indicated" status, Plaintiffs Alexander, Lowrey, and R.L.P. do not allege that they have already suffered any compensable injury from the fact that their names are listed on the Central Registry or from the disclosure of their "indicated" dispositions to third parties.

Accordingly, all claims of Plaintiffs Alexander, Lowrey, and R.L.P. for monetary damages against Defendants Buckner, Mashego, Haag, Walter, and Dollar in their individual capacities in conjunction with "indicated" dispositions are due to be dismissed for lack of standing. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (holding that, to establish standing, plaintiffs must show they have "suffered an 'injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical").

> ii. *Claims for Prospective Relief of Plaintiffs Alexander and Lowrey Against Defendants Haag, Walter, and Dollar With Respect to "Indicated" Dispositions*

Because prospective relief regulates future conduct, a party establishes an "injury in fact" for standing purposes "if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994);

*see also Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999) ("[T]o meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.").

All Plaintiffs generally assert claims for injunctive relief against Defendants Haag, Walter, and Dollar. However, Defendants Haag, Walter, and Dollar are not accused of wrongdoing with respect to any Plaintiffs other than Plaintiffs Alexander and Lowrey. Specifically, Plaintiff Alexander asserts claims against Defendant Haag for failing to notify him of his right to a hearing and failing to forward his hearing request to DHR's Office of Administrative Hearings, and Plaintiff Lowrey asserts claims against Defendants Walter and Dollar for failing to notify her of her right to a hearing and failing to transmit her hearing request to DHR's Office of Administrative Hearings. (Doc. # 28 at ¶¶ 30-32, 43-48.)

As the amended complaint makes clear, Plaintiffs Alexander and Lowrey are already aware of their due process rights. Further, DHR is already aware of the demands of Plaintiffs Alexander and Lowrey for due process hearings to challenge their "indicated" statuses. Defendants Haag, Walter, and Dollar are not alleged to have supervisory or policymaking authority that would make them amenable to an order for prospective relief requiring DHR to provide hearings or amend its policies and procedures to comply with due process requirements for "indicated"

dispositions of non-educators like Plaintiffs Alexander and Lowrey. Therefore, the amended complaint contains no facts that would support a request for prospective relief against Defendants Haag, Walter, and Dollar because there is no reason to conclude that Plaintiffs Alexander and Lowrey personally would obtain meaningful relief from an order requiring those Defendants to notify them of their due process rights or forward the hearing requests to the Office of Administrative Hearings. Put another way, the amended complaint contains no facts from which it could reasonably be inferred that Plaintiffs Alexander and Lowrey are at risk of any *future* injury from the past conduct of Defendants Haag, Walter, or Dollar. Accordingly, the claims of Plaintiffs Alexander and Lowrey against Defendants Haag, Walter, and Dollar for prospective relief from their indicated statuses are due to be dismissed for lack of standing.

Further, because all claims for prospective relief against Defendants Haag, Walter, and Dollar are subject to dismissal for lack of standing, and because (as explained in Section IV.B.2.i.) all claims for monetary relief against Defendants Haag, Walter, and Dollar are also due to be dismissed for lack of standing, all claims against Defendants Haag, Walter, and Dollar, are subject to dismissal, and those Defendants are due to be dismissed from this action.

iii.    *Claims for Prospective Relief Against Defendants Buckner and Mashego with Respect to "Indicated" Dispositions of Plaintiffs Alexander, Lowrey, and R.L.P.- Constitutional (Article III) Standing*

Defendants argue that Plaintiffs Alexander, Lowrey, and R.L.P. lack standing to seek prospective relief.  At this point in the analysis, a few observations are necessary to explain the narrowing of the court's consideration of that argument solely to the claims of Plaintiffs Alexander and R.L.P. against Defendants Buckner and Mashego for prospective relief from "indicated" statuses. First, as explained Section IV.B.2.iv., all claims for prospective relief against Defendants Haag, Walter, and Dollar are due to be dismissed for lack of standing. Second, Defendants Matt and Henderson are alleged to have engaged in conduct that only affected Plaintiff Collier, and, as explained in Section IV.B.1., Plaintiff Collier's claims for prospective relief against all Defendants are moot.  Third, as will be explained in Section IV.C., Plaintiff Lowrey's claims against Defendant Buckner for prospective relief are due to be dismissed on grounds of res judicata.[12] Fourth, Plaintiff Lowrey, who is a Jefferson County resident and was subject to a Jefferson County DHR investigation, has alleged no facts from which it could reasonably be inferred that she has any claim for prospective relief against

---

[12] Because standing is a jurisdictional issue, the court ordinarily would reach the standing issue before considering the merits of affirmative defenses arising out of preclusion doctrines. However, because of the complexity of the law on the standing question, and because there can be no question that Plaintiff Lowrey's claims are precluded by res judicata, the court finds that a standing analysis regarding Plaintiff Lowrey's remaining claims for prospective relief would unnecessarily burden an already lengthy Memorandum Opinion.

Defendant Mashego in her official capacity as the Director of the *Shelby* County DHR. (Doc. # 28 at ¶¶ 8, 15.) Thus, Plaintiff Lowrey's claims for prospective relief against Defendant Mashego are due to be dismissed for failure to state a claim upon which relief could be granted.

Therefore, of the claims for prospective relief from "indicated" dispositions, only the claims of Plaintiffs Alexander and R.L.P. against Defendants Buckner and Mashego warrant further discussion. Unlike Defendants Matt, Henderson, Haag, Walter, and Dollar, Defendant Buckner (in her official capacity as Commissioner of Alabama DHR) and Defendant Mashego (in her official capacity as the Director of Shelby County DHR) *are* alleged to have policymaking authority regarding the handling of challenges to "indicated" dispositions of non-educators, including Plaintiffs Alexander and R.L.P. Further, Defendants Buckner and Mashego are alleged to be the DHR authorities whose official acts and omissions prevented, and continue to prevent, Plaintiffs Alexander and R.L.P. from challenging their "indicated" dispositions in accordance with constitutional due process requirements. Finally, any prospective relief against Alabama and Shelby County DHR would be appropriately entered against Defendants Buckner and Mashego in their respective official capacities as Directors of Alabama DHR and Shelby County DHR. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (holding that official-capacity suits "'generally represent only another way of pleading an action

against an entity of which an officer is an agent'" (quoting *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)).

Defendants argue that Plaintiffs Alexander and R.L.P. lack standing to seek declaratory and injunctive relief to challenge their "indicated" dispositions because those two Plaintiffs face no real threat of future injury. (Doc. # 31 at 18-20.) In support of this argument, Defendants cite *City of Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983), in which the United States Supreme Court held that a plaintiff who had been the subject of a police chokehold during an arrest had no standing to maintain claims for equitable relief against the police chokehold policy because nothing more than pure speculation would support any assertion that the plaintiff would again be arrested and placed in a chokehold.

Unlike the Plaintiff in *Lyons*, Plaintiffs Alexander and R.L.P. have asserted facts from which it could reasonably be inferred that they face a real, concrete threat of future injury, regardless of whether they will one day be the subject of another DHR investigation. Plaintiffs Alexander and R.L.P. are the subjects of "indicated" dispositions that are *currently* on the Central Registry. Plaintiffs Alexander and R.L.P. contend that, as a result of actions taken under color of state law and tortious conduct by Defendants Buckner and Mashego in their official capacities, they have been and continue to be deprived of an adequate due process hearing to challenge those "indicated" dispositions. Aside from the administrative

record review process, there are no procedures under Alabama law by which a non-educator like Plaintiffs Alexander and R.L.P. could challenge the validity of an "indicated" disposition. Except for the opportunity for an administrative record review, which has already passed and which Plaintiffs Alexander and R.L.P. contend is constitutionally insufficient, it is *already* a legal certainty that Alabama law and DHR regulations and policies afford Plaintiffs Alexander and R.L.P. no opportunity to challenge the validity of their "indicated" statuses.[13]

Further, Plaintiffs R.L.P. and Alexander allege that their "indicated" statuses, which are already listed on the Central Registry and which they have not been and never will be afforded due process to challenge, will likely be released to prospective employers or to their children's schools and other organizations conducting extracurricular children's activities at which they wish to volunteer. Ala. Admin. Code r. 660-5-34-.08(4) (providing that, once an "indicated" disposition is placed on the Central Registry, it may be released to third parties as allowed by law). However, Plaintiffs Alexander and R.L.P. do not merely allege that they face potential reputational damage as a result of the likely publication of their "indicated" dispositions. *See Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1302 (11th Cir. 2001) (noting that defamation by the government, without

---

[13] Available procedures for expungement of an "indicated" disposition are extremely limited and, when available, do not allow for a due process hearing challenge to the merits of the "indicated" disposition. Ala. Code § 26-14-8(e) Ala. Admin. Code r. 660-5-34-.09(5)(i)-(j) (procedures for expungement).

concomitant injury to some other legally protected interest, is not sufficient to "invoke the procedural protections of the Due Process Clause").  Rather, Plaintiffs Alexander and R.L.P. contend that, because of the potential for disclosure of their "indicated" dispositions (which they have not been and will not be afforded due process to challenge), they are or imminently will be deprived opportunities to engage in activities and pursuits available to other citizens, such as employment, volunteering, and being involved in their children's educational and extracurricular activities.  (Doc. # 28 at ¶¶ 35, 60-61.)  Therefore, Plaintiffs Alexander and R.L.P. seek prospective relief to prevent future injury to their constitutionally protected liberty interests, which include

> not merely freedom from bodily restraint, but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of [one's] own conscience, and generally to enjoy those privileges long recognized as essential to the orderly pursuit of happiness by free men.

*Meyer v. Nebraska*, 262 U.S. 390, 399 (1923).

Plaintiff R.L.P. is a minor who has no children.  (Doc. # 28 at ¶¶ 60-61.) Despite Plaintiff R.L.P.'s alleged present desire to have children at some unknown date in the future, it remains to be seen whether he will one day become a father. The possibility that disclosure of R.L.P.'s "indicated" status will prevent him from volunteering in his as-yet-unborn children's activities is too remote to satisfy the requirements of Article III.  *See Texas v. United States*, 523 U.S. 296, 300 (1998)

(holding that "a claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all" (citations and internal quotation marks omitted)).

However, even as a minor and young adult,[14] R.L.P. is at the time of life when citizens ordinarily are faced with decisions directed at choosing a career, such as course selection in school, or deciding on, preparing for, and pursuing a trade or a path to college or the military. Options available to other young people, such as the potential for a teaching or military career, will likely be limited as to R.L.P. if and when his "indicated" status is disclosed. The uncertainty caused by requiring R.L.P. to wait to resolve his challenge to his "indicated" status will harm him by burdening his choices at a time of life when he would otherwise be most able to set himself on the path to his chosen career. Unlike other young people, R.L.P. must either (1) forgo careers that are closed to persons with "indicated" child abuse listings on the Central Registry, or (2) invest substantially in preparing for a career in such a field on the chance that, after he one day applies for and is denied employment in that field, he then will be able to successfully challenge the lack of due process afforded by the administrative record review that ended in a

---

[14] R.L.P. had to have been at least 14 years of age at the time of the DHR sent its August 10, 2013 letter (Doc. # 31-6) notifying him that the "indicated" disposition would be placed on the Central Registry. *See* Ala. Admin. Code r. 660-5-34-.04 ("[A] person allegedly responsible for abuse/neglect is defined as a person fourteen years of age or older. No child under the age of fourteen will be listed on a child abuse/neglect report as responsible for abuse/neglect.").

"final"[15] decision in April 2013.

Therefore, even before R.L.P's "indicated" status may be disclosed to potential employers, potential disclosure of his "indicated" disposition is substantially likely to burden his ability "to contract [and] to engage in any of the common occupations of life." *Meyer*, 262 U.S. at 399. R.L.P. faces a real, immediate, concrete threat of injury, that injury is fairly traceable to Defendants' failure to provide him with sufficient due process to contest his "indicated" status, and declaratory and injunctive relief are capable of preventing the injury.[16] *Adler*, 112 F.3d at 1477 (holding that the purpose of injunctive and declaratory relief is to avert future harm).

Besides, delaying the availability of an action for prospective relief until the eventual date of rejection from employment is essentially useless to a teenager. As

---

[15] The administrative reviewer's decision "is final." Ala. Admin. Code r. 660-5-34-.08.

[16] In *Smith ex rel. Smith v. Siegelman*, 322 F.3d 1290, 1296 (11th Cir. 2003), the Eleventh Circuit held that, although a minor's "employment and custody rights in the future could be affected adversely due to the information on the Central Registry," the minor did not allege injury to a constitutionally protected interest because the minor had yet to gain custody of any children he may have or to choose to work in a career from which his "indicated" status would bar employment. However, *Smith* was expressly directed solely at claims for monetary relief, not claims for injunctive relief. Therefore, while *Smith* is consistent with this court's finding that R.L.P. has no standing to assert claims for monetary relief because he has not yet suffered a concrete injury, *Smith* is not useful in analyzing the injury-in-fact aspects of R.L.P.'s claims for *prospective* relief, which are designed to prevent future injuries. *See Smith*, 322 F.3d at 1291 (noting that "[t]he sole issue in this interlocutory appeal" concerned whether the defendants were entitled to qualified immunity, which is a defense to claims for monetary relief); *see also Smith*, 322 F.3d at 1294 (noting that the plaintiff had sought injunctive relief and compensatory damages in his complaint and that the claim for compensatory damages was "the relief at issue in this appeal").

time passes, memories morph and fade, evidence is lost, witnesses move on, and R.L.P.'s designation as a child abuser will gradually ossify into an immutable monument to his own constitutional abuse at the hand of the State. By the time R.L.P. is one day rejected for employment, his remedy will be stone cold and dead.

Plaintiff Alexander, who is currently a parent, alleges that the threat of disclosure of his "indicated" disposition, which is already on the Central Registry, currently interferes with his ability to volunteer and participate in his children's school and extracurricular activities. *See Thomas v. Buckner*, No. 2:11-CV-245-WKW, 2012 WL 3978671, at *5-8 (M.D. Ala. Sept. 11, 2012) (noting that, in today's society, it is common practice for schools and organizations catering to children to require background checks (even if not statutorily required) on adult volunteers, including parents). Accordingly, with respect to claims for prospective relief from his "indicated" status, Plaintiff Alexander has shown that he faces a real, immediate, concrete threat of injury, that the threatened injury is fairly traceable to Defendants' failure to provide him with a sufficient opportunity to contest his "indicated" status, and that declaratory and injunctive relief are capable of relieving the injury.

Therefore, Plaintiffs R.L.P. and Alexander have constitutional standing to seek prospective relief from the denial of a hearing to challenge their "indicated" statuses, and, from an Article III standpoint, those claims are ripe for review.

iv. *Claims for Prospective Relief Against Defendants Buckner and Mashego with Respect to "Indicated" Dispositions of Plaintiffs Alexander and R.L.P.- Prudential Standing*

The claims of Plaintiffs R.L.P. and Alexander for prospective relief against Defendants Buckner and Mashego meet the prudential requirements of standing.[17] In seeking relief from the denial of a hearing to challenge their own "indicated" statuses, Plaintiffs Alexander and R.L.P. are seeking relief from injuries that are particular to them and that affect their own personal liberty interests. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) (noting prudential aspects of standing include requirements that the asserted harm must not be a mere "generalized grievance" shared equally by a large number of people, and that the plaintiff must assert his or her own legal rights).

This is not a class action. Therefore, particularly as to requests for injunctive or declaratory relief involving DHR's handling of "indicated" dispositions of non-educators who are not parties to this lawsuit,[18] determining the

---

[17] The Supreme Court has suggested that the "continuing vitality" of the prudential aspects of ripeness and standing may be in some question because prudential limitations on exercising jurisdiction may at times be "'in some tension with our recent reaffirmation of the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging,'" not to mention the constitutional guarantees of due process and the right of the people to petition their government for a redress of grievances. *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2347 (2014) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (citation and internal quotation marks omitted)); *see also* U.S. Const. Amend. I & V.

[18] For example, Plaintiffs seek declaratory and injunctive relief requiring Defendants Buckner and Mashego to purge from the Central Registry "all reports, names, information, and

scope of prospective relief available to Plaintiffs Alexander and R.L.P. may at some point require consideration of the prudential doctrine that "a party may not ordinarily claim standing to vindicate the constitutional rights of some third party." *Thomas v. Buckner*, No. 2:11-CV-245-WKW, 2011 WL 4071948, at *5 (M.D. Ala. Sept. 13, 2011) (quoting *Touchston v. McDermott*, 234 F.3d 1133, 1151 n. 50 (11th Cir. 2000) (en banc) (Tjoflat, J., dissenting)). However, for two reasons, the court will not at this time decide the extent, if any, to which that prudential doctrine limits the scope of prospective relief available to Plaintiff Alexander and R.L.P. First, the rule against a plaintiff who has constitutional standing vindicating the rights of third parties "is a prudential, rather than jurisdictional, rule of practice." *Id.* Second, regardless of the viability of requests for prospective relief regarding DHR's handling of "indicated" dispositions of other non-educators who are not parties to this lawsuit, it is sufficient for purposes of ruling on the motion to dismiss to note that, with respect to every cause of action on which they seek prospective relief, Plaintiffs Alexander and R.L.P. do seek at least some prospective relief to vindicate their own rights.[19] Therefore, there are no counts in the amended complaint that are due to be dismissed for failure of Plaintiff

---

data . . . in those instances where the person receiving notice of the 'indicated' disposition" requested and was denied a hearing to contest the "indicated" disposition. (Doc. # 28 at 46 ¶ F.)

[19] For example, Plaintiffs Alexander and R.L.P. seek declaratory and injunctive relief directing Defendants Buckner and Mashego to afford them each a due process hearing to challenge their "indicated" dispositions. (Doc. # 28 15 45 ¶ C.)

Alexander or R.L.P. to seek prospective relief on their own behalf.

In addition to concerns about the vindication of rights of persons not parties to the lawsuit, the prudential aspects of ripeness also require consideration of the fitness of the issues for judicial decision and the hardship to the parties of withholding judicial review. *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2347 (2014); *Harrell v. The Florida Bar*, 608 F.3d 1241, 1258 (11th Cir. 2010); *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997). At least some of the injury that would be averted by prospective relief—specifically, damage to protected liberty interests following disclosure of Plaintiffs' "indicated" statuses—has not yet occurred. However, the alleged wrongful conduct—denial of due process—has already occurred or is absolutely certain to occur, and there is no reason to suspect that future events would enhance, or even preserve, the court's ability to consider the legality of that past conduct.[20] Accordingly, the alleged denial of due process is fit for consideration at this time.

Waiting to address prospective relief for Plaintiffs Alexander and R.L.P.

---

[20]  For persons like Plaintiffs Alexander and R.L.P. who do not qualify for a CA/N hearing, Alabama law and DHR regulations and policies afford only a pre-deprivation administrative record review. The decision at the record review stage is "final," after which the "indicated" disposition is placed on the Central Registry. There are no procedures available under Alabama law or DHR regulations or policies for post-deprivation challenges to "indicated" dispositions after the waiver or conclusion of a record review. In other words, Plaintiffs R.L.P. and Alexander have already allegedly been denied due process in the pre-deprivation administrative record review, and it is a legal certainty that they will not be afforded any other hearing even after their Central Registry listings are potentially disclosed to third parties. Therefore, the unavailability of due process is currently ascertainable as a matter of law and is not dependent on the occurrence of future events.

until some future date when disclosure of their "indicated" statuses to third parties injures their employment or family interests poses risks (1) of hardship to Plaintiffs of burdens on or damage to their liberty interests in the interim; and (2) of hardship to all parties because, if prospective relief is warranted, evidence will grow stale with unnecessary passing of time, witness memories will fade, DHR personnel will shift, and review of the merits of the "indicated" statuses will become increasingly difficult. In addition, although not dispositive of the issue of prudential jurisprudence, the court notes that third parties–Plaintiff Alexander's family, alleged victims of child abuse by Plaintiffs Alexander and R.L.P., and (in the event of a meritorious "indicated" disposition) potential future victims – will benefit from the certainty of the earliest possible resolution of Plaintiffs' challenges to their "indicated" statuses.

Having weighed the fitness of the issues for adjudication and the relative harms of waiting until a future date to resolve the issues, the court concludes that Plaintiff Alexander's and Plaintiff R.L.P.'s due process challenges with respect to their "indicated" dispositions satisfy the requirements of prudential ripeness. Those claims "'are sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court.'" *Digital Props*, 121 F.3d at 589 (quoting *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995)); *see Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated on other grounds by*

*Califano v. Sanders*, 430 U.S. 99 (1977) (holding that the purpose of the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements").

### 3. *Standing as to Plaintiffs with "Not Indicated" Statuses: Plaintiffs Alexander, Burroughs, and Saunders*

Plaintiffs Alexander, Burroughs, and Saunders bring federal and state law claims for monetary, injunctive, and declaratory relief based on allegations that they are entitled to a hearing to contest their "not indicated"[21] statuses. However, Plaintiffs Alexander, Burroughs, and Saunders have not alleged that they have suffered or are imminently in danger of suffering any injury as a result of DHR's conclusion that child abuse was "not indicated," the alleged lack of procedures to challenge or expunge[22] the "not indicated" status, or the fact that their "not indicated" statuses are maintained on the Central Registry. They have not alleged facts from which it can reasonably be inferred that their "not indicated" statuses have or will be disclosed to any third party or that a hearing would result in any improvement to the "not indicated" status. Further, they have not alleged facts

---

[21] As previously noted, Plaintiff Alexander was the subject of both an "indicated" and a "not indicated" disposition.

[22] Although the amended complaint is unclear, it appears that Plaintiffs Alexander, Burroughs, and Saunders may be attempting to assert claims that the State of Alabama makes no provision for expungement of their "not indicated" statuses. The court notes that expungement procedures for "not indicated" statuses do exist under Alabama law. *See, e.g.*, Ala. Code § 26-14-8 (providing for expungement of "not indicated" statuses after five years if no further child abuse reports have been received by DHR).

from which it could be reasonably inferred that they are entitled to a hearing to challenge the listing or disclosure of their "not indicated" statuses.

Accordingly, the claims of Plaintiffs Alexander, Burroughs, and Saunders for monetary, injunctive, or declaratory relief arising from the maintenance of their "not indicated" statuses on the Central Registry are due to be dismissed for lack of standing and for failure to state a claim upon which relief can be granted. *Friends of the Earth*, 528 U.S. at 180–81.

## C. Res Judicata/Collateral Estoppel: Plaintiff Lowrey's Remaining Claims

Defendants argue that Plaintiff Lowrey's[23] claims challenging her "indicated" status are barred by collateral estoppel and/or res judicata. As noted in Section IV.B.2.i., Plaintiff Lowrey's claims for monetary relief are due to be dismissed for lack of standing. Plaintiff Lowrey seeks prospective relief only as to Defendants Buckner and Mashego in their official capacities. However, Plaintiff Lowrey, who was the subject of an "indicated" finding by *Jefferson* County DHR, (Doc. # 28 at ¶ 8) has alleged no facts indicating that her injuries could be addressed by prospective relief against Defendant Mashego, who is the *Shelby* County DHR Director. Therefore, Defendants' perclusion defenses to Plaintiff Lowrey's claims will be considered only with respect to her remaining claim for

---

[23] Defendants also argue that Plaintiff Burroughs's claims are barred by collateral estoppel and res judicata. However, because Plaintiff Burroughs's claims are due to be dismissed for lack of standing to challenge his "not indicated" status, there is no need to further consider defenses to Burroughs's claims.

prospective relief against Defendant Buckner in her official capacity.

Defendants have submitted documents[24] from a state court proceeding in which Plaintiff Lowrey challenged her "indicated" listing and sought to be removed from the Central Registry as an "indicated" child abuser. The state court complaint was filed on August 4, 2011, against Jefferson County DHR, Jefferson County DHR Director Amanda Rice, Alabama DHR, and Alabama DHR Commissioner Nancy Buckner, in her individual and official capacities. (Doc. # 31-1 at 1.) The state court case terminated with entry of summary judgment on the merits in favor of DHR on May 3, 2012. (Doc. # 31-2 at 1-2.) Lowrey did not appeal the judgment of the Jefferson County Circuit Court.

Alabama's law of res judicata determines whether the Alabama circuit court's judgment precludes Lowrey's federal and state law claims . *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1509 (11th Cir. 1985). Under Alabama law, res judicata bars an action on a previously litigated claim when four requirements are met: (1) there must have been a prior judgment on the merits; (2) the prior judgment must have been rendered by a court of competent jurisdiction;

---

[24] The court takes judicial notice of the state court documents attached to the motion to dismiss, as well as the contents of the entire state court record in *Lowrey v. Rice*, Jefferson County, Alabama Circuit Court case number CV-2011-902783.00. "A court may take notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). A court may take judicial notice of the contents of public records, such as state court proceedings, without converting a motion to dismiss into a summary judgment motion. *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010).

(3) there must be substantial identity of the parties; and (4) both cases must involve the same causes of action. *Kizzire v. Baptist Health System, Inc.*, 441 F.3d 1306, 1308-09 (11th Cir. 2006).

All four res judicata elements are met in this case. Lowrey's remaining claims in this action for declaratory and injunctive relief are directed solely to Defendant Nancy Buckner in her official capacity as Director of Alabama DHR. Nancy Buckner, along with Alabama DHR,[25] was also a defendant in the state court action. Plaintiff Lowrey's complaint in the state court action, in which she received an adverse final judgment on the merits by a court of competent jurisdiction, challenged the validity of maintaining her "indicated" disposition on the Central Registry and the lack of due process to challenge the "indicated" disposition, and she sought expungement of her "indicated" status from the Central Registry. In this case, Plaintiff Lowrey also seeks an opportunity to challenge her "indicated" status and to have her "indicated" status removed from the Central Registry.[26] Thus, the two cases involve the same causes of action for purposes of the res judicata analysis. *Old Republic Ins. Co. v. Lanier*, 790 So. 2d 922, 928 (Ala.

---

[25] *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (holding that official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent'" (quoting *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)).

[26] There is no question that the same "indicated" listing is at issue in the two cases. The present case and the state court proceeding are both challenges to an "indicated" listing of which Lowrey was notified on September 7, 2007. (Doc. # 28 at ¶ 40; Doc. # 31-1 at 3.)

2000) ("[T]he principal test for comparing causes of action for the application of res judicata is whether the primary right and duty or wrong are the same in each action. Res judicata applies not only to the exact legal theories advanced in the prior case, but to all legal theories and claims arising out of the same nucleus of operative facts." (quotations and citations omitted)).

Accordingly, Plaintiff Lowrey's claim for prospective relief against Defendant Buckner in her official capacity is due to be dismissed on grounds of res judicata. Because the doctrine of res judicata is applicable, it is unnecessary to consider Defendants' collateral estoppel defense.

## D. Statute of Limitations: Plaintiff Collier's Claims for Monetary Relief and Plaintiff R.L.P.'s Claim for Prospective Relief[27]

### 1. *Plaintiff Collier's Claims for Monetary Relief*

Defendants argue that Plaintiff Collier's § 1983 and state law tort claims for monetary relief[28] are barred by the two-year statute of limitations. *See* Ala. Code 1975 § 6-2-38(l) ("All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be

---

[27] Defendants also argue that the statute of limitations has run on the claims of Plaintiff Lowrey. As explained in Section IV.B.2.ii.-iii. and Section IV.C, Plaintiff Lowrey's claims are due to be dismissed for lack of standing and on res judicata grounds. Further, as explained in Section IV.B.2.i., R.L.P.'s claims for monetary damages are due to be dismissed for lack of jurisdiction.

[28] As noted in Section IV.B.1., Plaintiff Collier's claims for prospective relief are moot. Therefore, the court will not consider Defendants' statute of limitations defense as to Plaintiff Collier's claims for prospective relief.

brought within two years."); *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989) ("[T]he two-year limitations period of Ala. Code [1975] § 6–2–38(l) applies to [§] 1983 actions in Alabama.").

The statute of limitations clock begins to run on a § 1983 claim when the plaintiff "knows or should know (1) that [she has] suffered the injury that forms the basis of [her] complaint and (2) who has inflicted the injury." *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003). The statute of limitations begins to run on a state law cause of action from the moment the cause of action accrues, which is not necessarily the same moment that the defendant commits a wrongful act. *Sys. Dynamics Int'l, Inc. v. Boykin*, 683 So. 2d 419, 421 (Ala. 1996) ("The period allowed by the statute of limitations is to run from the date of the accrual of a cause of action, not from the date of the occurrence of the act that provides the basis for the cause of action."); *Desouza v. Lauderdale*, 928 So. 2d 1035, 1040 (Ala. Civ. App. 2005) ("It is well-settled law in Alabama that the statutory limitations period as to tort claims begins to run when the cause of action accrues.").

Defendants argue that the two-year statute of limitations has run on Plaintiff Collier's federal and state law claims because all of the following occurred more than two years prior to the filing of this action: the initial date of the "indicated" listing; the dates on which Plaintiff Collier was originally notified of the

"indicated" disposition and of the adverse outcome of a record review; and the date on which Plaintiff Collier was first denied an administrative hearing. Defendants' attempt to measure the running of the statute of limitations from any of those dates is without merit. The statute of limitations did not begin to run on Plaintiff Collier's claims for monetary relief until she was injured by loss of employment due to DHR's disclosure of the "indicated" disposition to her employers. *See Campbell v. Pierce Cty., Ga. by & Through Bd. of Comm'rs of Pierce Cty.*, 741 F.2d 1342, 1344-45 (11th Cir. 1984) ("[T]he factual predicate for a claim of reputational damage is the publication of adverse material."); *Gilmore v. M & B Realty Co.*, 895 So. 2d 200, 207 (Ala. 2004) (noting the plaintiffs' concession that "§ 6–2–38(l), Ala. Code 1975, prescribes a two-year statute of limitations for their negligence and wantonness claims, measured from the date of injury"); *see also Smith ex rel. Smith v. Siegelman*, 322 F.3d 1290, 1296 (11th Cir. 2003) (holding, in an appeal involving only claims for monetary relief, that a § 1983 plaintiff who was listed on the Central Registry as an "indicated" child abuser had not yet suffered a constitutional injury because he had not yet suffered loss of employment or infringement of family integrity due to disclosure of the "indicated" status); *McFadden v. Ten-T Corp.*, 529 So. 2d 192, 197–98 (Ala. 1988) ("[T]he statute of limitations for negligence runs from the date of the plaintiff's injury, not from the date of the act causing the injury.").

Plaintiff Collier alleges that she suffered injuries from loss of two different jobs due to DHR's dissemination of her "indicated" status on two distinct occasions. First, Plaintiff Collier alleges that she lost her teaching job sometime in 2012[29] as a result of DHR's disclosure of her "indicated" status to the Shelby County Board of Education. Second, in October 2014, which was less than two years before the filing of the April 17, 2015 complaint, Plaintiff Collier again lost a job when DHR disclosed her "indicated" listing to her day care employer. *See Campbell*, 741 F.2d 1342, 1344-45 (11th Cir. 1984) (noting that the publication of adverse material is the factual predicate for a claim of reputational damage); *Sys. Dynamics Int'l, Inc*, 683 So. 2d at 421 ("[I]n situations where the [defendant's wrongful] act itself is not a legal injury, not a completed wrong, and the plaintiff's injury comes only as a result of what the defendant has done, the cause of action accrues and the limitations period begins to run when damage is sustained.").

Defendants have failed to meet their burden to demonstrate that some or all of Plaintiff Collier's claims are barred by their affirmative statute-of-limitations defense. First, they failed to recognize that, by law, none of the dates they

_____

[29] Plaintiff Collier alleges that, "at the time the 'indicated' disposition was made by Defendants Matt and Henderson," she was terminated from her position as a Shelby County teacher. (Doc. # 28 at ¶ 3.) Defendants Matt and Henderson made the initial "indicated" disposition in April 2012, and the "indicated" disposition was affirmed after a record review and placed on the Central Registry in November 2012. Thus, construing the allegations of the amended complaint in the light most favorable to Plaintiff Collier, she lost her teaching job sometime in 2012 as a result of DHR's disclosure of her "indicated" status to the Shelby County Board of Education.

proposed triggered the running of the statute of limitations. Second, they entirely failed to address whether DHR's disclosure of Plaintiff Collier's "indicated" status and the resulting loss of Plaintiff Collier's teaching and/or day care job triggered the running of the statute of limitations on some or all of her claims. Therefore, Defendants' motion to dismiss is due to be denied with respect to the statute-of-limitations defense to Plaintiff Collier's claims for monetary damages.

## 2. *Plaintiff R.L.P.*

Defendants argue that the statute of limitations has run on the claims of Plaintiff R.L.P. for prospective relief because more than two years prior to the filing of this lawsuit, his causes of action accrued when he received a letter notifying him that a record review had been completed. (Doc. # 31 at 54-55; Doc. # 3-5; Doc. # 31-6.) However, because R.L.P. prominently alleges he was a minor on the date this action was filed, Defendants have not fully cited the correct law regarding the statute of limitations applicable to his claims. Although Alabama's two-year statute of limitations generally applies to § 1983 and state law tort claims,[30] Alabama law also contains a tolling provision under which the limitations period begins to run on a minor's claims on the date the minor reaches the age of majority, which, in Alabama, is 19 years of age. Ala. Code § 6-2-8(a) ("If anyone entitled to commence any of the actions enumerated in this chapter . . . is, at the

---

[30] Ala. Code 1975 § 6-2-38(l); *Jones*, 876 F.2d at 1483.

time the right accrues, below the age of 19 years . . . he or she shall have three years, or the period allowed by law for the commencement of an action if it be less than three years, after the termination of the disability to commence an action."); *Ex parte Trawick*, 959 So. 2d 51, 63 (Ala. 2006) (overruling application for rehearing) (holding that, even though the alleged abuse incident giving rise to a minor's negligence claim against a DHR social worker occurred more than two years before the complaint was filed, the claim was not time-barred because of § 6-2-8(a)'s tolling provision).

State tolling provisions are considered an integral part of the state's limitations policy and must be applied in § 1983 actions unless otherwise inconsistent with federal law or the purposes of § 1983.[31] *Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 484, 488 (1980), *abrogated on other grounds by Wilson v. Garcia*, 471 U.S. 261, 263 (1985), *superseded by statute on other grounds as recognized in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 380 (2004) (holding that, "[i]n § 1983 actions . . . a state statute of limitations and the coordinate tolling rules are more than a technical obstacle to be circumvented if possible. In most cases, they are binding rules of law" unless the tolling rule is inconsistent with the United States Constitution or federal law); *Dukes v. Smitherman*, 32 F.3d 535, 537 (11th Cir. 1994) (holding, in the context of a § 1983

[31] Defendants do not argue that tolling the statute of limitations for minors is against the policy of § 1983 or federal law.

52

action, that "[f]ederal courts must look to state law to determine, first, what statute of limitations is applicable, and second, whether that limitations period is tolled");[32] *Holt v. Baker*, 710 F. App'x 422, 424 (11th Cir. 2017) (recognizing, in a case brought pursuant to § 1983, that "Alabama Code § 6-2-8 provides for the suspension of the limitations period in cases of disability").

Therefore, as a matter of law, even if Plaintiff R.L.P.'s claims accrued on the date of DHR's letter to R.L.P., the limitations period was tolled by § 6-2-8 because he was a minor. R.L.P. filed this action before he reached the age of majority and before the two-year limitations period had even begun to run on his state law and § 1983 claims. Accordingly, with respect to Defendants' statute of limitations defense to R.L.P.'s claims for prospective relief, the motion to dismiss is due to be denied.

## E.   Count I

Count I of the amended complaint, brought by Plaintiffs Alexander, Lowrey, R.L.P., Burroughs, and Saunders,[33] is labeled a "claim for injunctive relief pursuant to 42 U.S.C. § 1983." (Doc. # 28 at 31.) Plaintiffs contend that they face injury from continued placement on the Central Registry as "indicated" child abusers because of policies implemented by Defendants Buckner and Mashego to

---

[32] *Dukes*, 32 F.3d 535, was based on a tolling provision for convicted prisoners in Ala. Code § 6-2-8. That provision which was eliminated from the statute in 1996. *See Holt v. Baker*, 710 F. App'x 422, 424 (11th Cir. 2017).

[33] Plaintiff Collier is the only Plaintiff not included in Count I.

systematically deny hearing requests and to divulge "indicated" statuses to third parties without providing adequate procedures for contesting "indicated" statuses. (Doc. # 20 at ¶¶ 75-76.) Plaintiffs contend that no constitutionally adequate process exists to allow them to challenge the "indicated" statuses. (Doc. # 28 at ¶ 77.)

As to the challenges of Plaintiffs Alexander and R.L.P. to their "indicated" statuses, Count I is due to be dismissed as duplicative of Count III, which also seeks declaratory and injunctive relief from the denial of constitutionally adequate due process to challenge "indicated" statuses. As to Plaintiff Lowrey, Count I is due to be dismissed because, for the reasons stated in Section IV.B.2.ii.-ii and Section IV.C., all her claims for prospective relief are due to be dismissed for lack of jurisdiction and on grounds of res judicata. As to the claims of Plaintiffs Burroughs and Saunders, and as to Plaintiff Alexander's claims challenging his "not indicated" disposition, Count I is due to be dismissed because, as more fully explained in Section IV.B.3., all claims challenging "not indicated" dispositions are due to be dismissed for lack of jurisdiction and failure to state a claim on which relief can be granted.

## F.    <u>Count II</u>

In Count II, Plaintiffs Alexander, Lowrey, R.L.P, Burroughs, and Saunders[34]

---

[34] Plaintiff Collier is the only Plaintiff not included in Count II.

seek a declaratory judgment that Defendants Buckner and Mashego must provide them with a "post-deprivation hearing" *before* placing their names and information on the Central Registry. (Doc. # 28 at ¶¶ 84-85.)

Plaintiffs allege no facts in conjunction with Count II, except to incorporate the previous 83 paragraphs of the amended complaint (including Count I) in their entirety in violation of the court's order to amend. (Doc. # 27 at 9 ¶ b. ("Plaintiffs may not simply incorporate all factual allegations by reference into every count; rather, Plaintiffs must indicate with clarity which specific factual allegations are material to each specific count.").) *See Weiland*, 792 F.3d at 1320-21 (noting that pleadings must be drafted with sufficient specificity that "the court can determine which facts support which claims").

Count II is due to be dismissed for failure to allege facts sufficient to comply with the notice pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure and for failure to comply with the order to amend. Count II is also due to be dismissed because Plaintiffs Alexander, Lowrey, R.L.P, Burroughs, and Saunders have not demonstrated a constitutional right to have their names withheld from the Central Registry until the conclusion of a hearing. *See Campbell*, 741 F.2d at 1345 (holding that, "[i]n cases where a liberty interest arising from reputational damage is implicated," "the hearing need not take place prior to . . . termination [of employment] or to the publication of related information adverse to

[the plaintiff's] interests").  Alternatively, to the extent that Count II might rest on the same facts and/or legal theories presented in Count III, which also seeks declaratory relief and does contain specific factual allegations, Count II is due to be dismissed (1) with respect to Plaintiff Alexander's and Plaintiff R.L.P's challenge to their "indicated" statuses, as duplicative of Count III; (2) as to Plaintiff Lowrey, because, for the reasons stated in Section IV.B.2.ii.-iii. and Section IV.C, her claims for prospective relief are due to be dismissed for lack of jurisdiction and on grounds of res judicata; and (3) as to the claims of Plaintiffs Burroughs and Saunders, and as to Plaintiff Alexander's claims challenging his "not indicated" disposition, because, as more fully explained in Section IVB.3., all claims challenging "not indicated" dispositions are due to be dismissed for lack of jurisdiction and for failure to state a claim on which relief can be granted.

## G.    Count III

Count III, which is titled "deliberate indifference," is a tangle of claims by all Plaintiffs against various Defendants for various due process deprivations on various occasions by various actions and means.  For the reasons stated in Section IV.B-D, all claims are due to be dismissed except Plaintiff Alexander's and Plaintiff R.L.P.'s claims for declaratory and injunctive relief from their "indicated"

statuses and Plaintiff Collier's claims for monetary damages.[35]   Therefore, Count III will be analyzed only as to the remaining claims of Plaintiffs Collier, Alexander, and R.L.P.   Despite the deficiencies of the amended complaint with respect to Count III, the court finds that, with some effort, Defendants might reasonably ascertain that, in Count III, Plaintiffs Collier, Alexander, and R.L.P. assert the following claims against them.

1.   ***Policy of Refusal to Schedule Hearings Upon Request; Policy Resulting in Failure to Forward Hearing Requests to the Office of Administrative Hearings***

Plaintiffs assert that Defendants Buckner and Mashego personally established customs, practices, and policies of systematically refusing to schedule hearings upon request.   (Doc. # 28 at ¶ 87(i)-(ii).)   Plaintiffs also assert that, as a result of policies maintained by Defendants Buckner and Mashego, hearing requests are not transmitted to the Office of Administrative Hearings.   Plaintiffs

---

[35] As explained in more detail Section IV.B-D, (1) Plaintiff Collier's claims for prospective relief are due to be dismissed as moot because she has already been afforded an administrative hearing; (2) claims for monetary damages by Plaintiffs Alexander, Lowrey, R.L.P, Burroughs, and Saunders are due to be dismissed for several reasons, including lack of jurisdiction (because none of those five Plaintiffs has alleged facts from which it could reasonably be inferred that they have already suffered an injury-in-fact from disclosure of their "indicated" and/or "not indicated" dispositions); (3) the claims for prospective relief by Plaintiff Burroughs and Saunders, as well as Plaintiff Alexander's claims for prospective relief with respect to his "not indicated" disposition, are due to be dismissed for lack of jurisdiction and failure to state a claim upon which relief can be granted because those Plaintiffs have not alleged facts from which it could reasonably inferred that they are entitled to a hearing to challenge their "not indicated" dispositions or that they are imminently in danger of any particularized injury as a result of the disclosure of their "not indicated" statuses; and  (4)  Plaintiff Lowrey's claims for prospective relief are due to be dismissed on res judicata grounds and for failure to state a claim upon which relief can be granted.

allege that they were deprived of their due process rights because of the policies maintained by Defendants Buckner and Mashego.

### a. *Plaintiffs Alexander and R.L.P.*

#### i. *What Process is Due*

Plaintiffs R.L.P. and Alexander contend that the available administrative record review does not comport with due process and that "DHR systematically affirms the original disposition of 'indicated' following completion of a record review."[36] (Doc. # 28 at ¶ 87.i., iv.)   Defendants argue that, even so, Plaintiffs

---

[36] It is not clear from the allegations of the complaint whether Plaintiff Alexander received an administrative record review.  Although Plaintiff Alexander is not necessarily entitled to a formal hearing before the Office of Administrative Hearings, he does clearly allege that he alerted Defendants in writing to his desire to contest his "indicated" status, that he has been denied his right to a due process hearing, and that the procedures available to him are inadequate to afford him the hearing to which he is entitled.  Under the circumstances, both the written notice Plaintiff Alexander provided DHR and the complaint are sufficient to place Defendants on notice that Plaintiff Alexander seeks to exercise the full extent of his due process rights to a hearing to contest the "indicated" status by presenting evidence and argument, whether or not the hearing to which he is entitled is a formal one. *Cf.* Ala. Admin. Code r. 660-1-5-.03 ("A hearing request is any clear written statement to the State Department or County Department that the aggrieved person wants the opportunity to present the case to a higher authority.").

R.L.P. does not state whether he requested a hearing.  However, it is undisputed that R.L.P. was afforded an administrative record review, which, under DHR regulations, is conducted upon request.  Ala. Admin. Code r. 6-5-34-.08.  Under the circumstances, a request for administrative record review, as well as the complaint in this case, is sufficient to place Defendants on notice that Plaintiff R.L.P. seeks to exercise the full extent of his due process rights to a hearing to contest the "indicated" status. *See* Ala. Admin. Code r. 660-1-5-.03.

Both Plaintiffs Alexander and R.L.P. allege that the administrative record review process is constitutionally insufficient because it does not comply with due process, and that there is no constitutionally sufficient process for non-educators like them to seek review of the "indicated" disposition.  (Doc. # 28 at ¶¶ 39, 62, 68, 87.)

Accordingly, for purposes of ruling on the motion to dismiss, Plaintiffs Alexander and R.L.P. have alleged facts sufficient to support a reasonable inference that they timely invoked

Alexander and R.L.P. have not demonstrated that they were deprived of constitutionally guaranteed due process. "Where a property interest is at stake, courts have usually held that a pre-deprivation hearing may be required," but where, as here, a liberty interest arising from reputational damage is at stake, "the courts have required only that the claimant be accorded notice of the charges against him and an opportunity to support his allegations and clear his name by argument however brief, and, if need be, by proof, however informal." *Campbell*, 741 F.2d at 1344-45 (citation and internal quotation marks omitted). Further, in the latter category of cases, "the hearing need not take place prior to . . . the publication of related information adverse to [the plaintiff's] interests." *Id*. at 1345.

Defendants' own exhibits and legal citations on the motion to dismiss demonstrate that the administrative record review process[37] does not permit a person with an "indicated" status "the opportunity to present evidence in his defense – to tell his side of the story." *Harrison v. Wille*, 132 F.3d 679, 684 (11th

---

their due process rights, and/or that any request for a due process hearing to challenge their "indicated" statuses would have been futile. Defendants do not contend otherwise.

[37] Alabama law affords only a record review to persons who wish to challenge an "indicated" status and who are not employed as educators or in other professions in which the "indicated" status would effectively deprive them of their livelihood. Ala. Code 1975 § 26-14-7.1 (providing that only persons in certain professions may request formal hearings); Ala. Admin. Code r. 660-5-34-.08(1), (3)-(4). Plaintiffs contend that the available record review does not comport with due process and that "DHR systematically affirms the original disposition of 'indicated' following completion of a record review." (Doc. # 28 at ¶ 87i., iv.)

Cir. 1998). Rather, an administrative record review is conducted by DHR staff without opportunity for the affected individual to present evidence or argument, and the reviewer's assessment is limited to reviewing *DHR's* version of the story by determining whether DHR's administrative record of its investigation contains "sufficient documentation based on a preponderance of the evidence to support the 'indicated' disposition." Ala. Admin. Code r. 660-5-34-.08(3). Accordingly, the administrative record review does not provide due process because it does not provide even an informal opportunity for the affected individual to refute the allegations underlying the "indicated" disposition. *Cf. Campbell*, 741 F.2d at 1345 ("While the features of [an informal post-deprivation] hearing . . . have been prescribed with substantial flexibility, courts have required that the claimant have notice of the charges which have been raised against him, and an opportunity to refute, by cross-examination or independent evidence, the allegations which gave rise to the reputational injury.").

Further, the decision at the administrative record review stage is "final," after which the "indicated" disposition is then placed on the Central Registry. Ala. Admin. Code r. 660-5-34-.08(3)(a)(4), (7). The court has not found, and the parties have not cited, any Alabama statute or regulation or DHR policy pursuant to which Plaintiffs may further challenge the validity of an "indicated" disposition, either before or after an "indicated" listing is placed on the Central Registry or

disclosed to third parties. Thus, the only procedure available to Plaintiffs Alexander and R.L.P. to challenge the validity of their "indicated" dispositions was an administrative record review. Although it was available to them only for a limited time *prior* to the placement of their "indicated" dispositions on the Central Registry and before the "indicated" dispositions could be disclosed to third parties,[38] the administrative record review did not afford even the informal due process that would be required in a post-deprivation hearing.

Whether the claims of Plaintiffs Alexander and R.L.P. are characterized as challenging the process available during the pre-deprivation administrative record review (which is the only procedure available to them), or whether their claims are characterized as challenging the total lack of adequate post-deprivation opportunities for review, they have successfully asserted facts from which it could reasonably be inferred that no DHR regulations or policies provide them even an informal opportunity to clear their names by submitting argument and evidence and cross-examining witnesses (which even Defendants concede is required).[39] Therefore, Plaintiffs Alexander and R.L.P. have sufficiently alleged deprivation of

---

[38] Except in emergency circumstances not relevant here, potential disclosure of "indicated" dispositions to third parties occurs after the "indicated" dispositions are entered on the Central Registry. Ala. Admin. Code r. 660-5-34-.08(4), (7).

[39] Defendants recognize that the law requires that even non-teachers are due at least an informal process to clear their name by submitting argument and evidence and cross-examining witnesses. They fail to address Plaintiffs' claim that administrative record reviews are procedurally inadequate. (Doc. # 31 at 46.)

due process.  Accordingly, Plaintiffs Alexander and R.L.P. have alleged facts sufficient to state claims that Defendants Buckner and Mashego, in their official capacities, propounded DHR policies that deprive them of due process to contest their "indicated" statuses.

> ii.  *Whether Plaintiffs Alexander and R.L.P. Allege Injury to a Constitutionally Protected Interest*

Defendants argue that Plaintiffs Alexander and R.L.P. have not suffered injury to a constitutionally protected liberty interest as required to sustain their § 1983 claims.  Without question, an "indicated" disposition is stigmatizing, at least to the extent that the disposition may be published or disseminated.  *Smith*, 322 F.3d at 1296.  However, stigma alone is not sufficient to establish a constitutional deprivation of a protected liberty interest that warrants due process protections.  *Smith ex rel. Smith v. Siegelman*, 322 F.3d 1290, 1296 (11th Cir. 2003).  There must be specific allegations of fact from which it can be inferred that Plaintiffs were "stigmatized in connection with a denial of a right or status previously recognized by state law," *i.e.*, a sufficient liberty interest.  *Id.* Therefore, to prevail on a § 1983 claim for reputational injury to a liberty interest, Plaintiffs must meet a "stigma-plus" test by demonstrating not only that they were stigmatized, but that "a right or status previously recognized by state law was distinctly altered or extinguished" in connection with the stigma. *Paul v. Davis*, 424 U.S. 693, 711 (1976).

Defendants point out that Plaintiffs R.L.P. and Alexander have not alleged that there *already* has been public disclosure of the "indicated" dispositions. That argument fails to take into consideration the prospective nature of Plaintiffs' claims for declaratory and injunctive relief, which are intended to prevent future injuries. *Adler v. Duval Cty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997). Defendants cite *Smith*, 322 F.3d 1290, for the proposition that the threat of a future injury is insufficient to qualify as an injury to a legally protected right under the "stigma-plus" test. *Smith*, however, was an appeal limited to the defense of qualified immunity and, therefore, was concerned only with the plaintiff's § 1983 claim for monetary relief.[40] Unlike a claim for prospective relief, a claim for monetary relief (like the one alleged in *Smith*) could only survive in the context of a constitutional injury that had already occurred.

Defendants contend that Plaintiff Alexander has not suffered alteration or extinguishment of a legally protected right or status because he does not allege that he already has suffered loss of employment, salary damage, or any other harm to a liberty interest in employment. (Doc. # 31 at 37.) However, a liberty interest in employment is not the only legally protected interest that may be damaged by

---

[40] *Smith*, 322 F.3d at 1291 ("The sole issue in this interlocutory appeal is whether nine public servants, who are being sued for money damages in their individual capacities under 42 U.S.C. § 1983, are entitled to qualified immunity with respect to the claim that they violated plaintiff's Fourteenth Amendment rights by designating him a child abuser without first affording him a due process hearing."); *see also Smith*, 322 F. d at 1294 (noting that the plaintiff had sought injunctive relief and compensatory damages but that the claim for compensatory damages was "the relief at issue in this appeal").

stigma. Liberty interests are also inherent in "establishing a home and bringing up children," *Meyer*, 262 U.S. at 399, as is the right "to direct the education and upbringing of one's children." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997); *see also Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) ("It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder."). As discussed in Section IV.B.iii.-iv., Plaintiff Alexander has specifically alleged that having an "indicated" disposition on the Central Registry interferes or is substantially likely to interfere in his ability to participate in the education and upbringing of his children to the fullest measure contemplated by this country's notions of liberty and family integrity. *See Thomas v. Buckner*, No. 2:11-CV-245-WKW, 2012 WL 3978671, at *5-8 (M.D. Ala. Sept. 11, 2012) (noting that, in today's society, it is common practice for schools and organizations catering to children to require background checks (even if not statutorily required) on adult volunteers, including parents).

Thus, Plaintiff Alexander sufficiently has alleged that the "indicated" status poses a real, imminent threat of distinctly altering his rights to family integrity because the stigma of the "indicated" status will likely make it more difficult for him to participate in his children's education and upbringing. Plaintiff Alexander should not be forced to wait until he is rejected as a participant in his children's

education before he can bring a procedural due process claim for prospective relief. The purpose of injunctive and declaratory relief is to avert future harm. *Adler*, 112 F.3d at 1477. Further, "[a]nticipatory waiting compounds the harm," as waiting for rejection following disclosure of the "indicated" status will deny Alexander his "protected parental rights and the [']indicated['] disposition of child abuse/neglect [will be] spread into the community." *Thomas*, 2012 WL 3978671, at *6.

Similarly, as explained in Section IV.B.2.iii.-iv., Plaintiff R.L.P. has alleged facts from which it can reasonably be inferred that the potential for disclosure of his "indicated" disposition burdens his liberty interests in the right "to contract [and] to engage in any of the common occupations of life, . . . and generally to enjoy those privileges long recognized as essential to the orderly pursuit of happiness by free men." *Meyer*, 262 U.S. at 399. Plaintiff R.L.P. is a minor, and he, like all other young people, is at a time of life for decisions and actions directed at choosing and preparing for an occupation, such as course selection in school, preparation for a trade, or navigating a path that will lead to college or the military. Therefore, at the present time, even before R.L.P. is ready to apply to a prospective employer, his "indicated" status is substantially likely to cause injury to a liberty interest by limiting the range of reasonable occupation-related choices at the age when young people begin making the decisions that set them on course to an eventual career.

Accordingly, Plaintiffs Alexander and R.L.P. satisfy the "stigma-plus" test, and the motion to dismiss is due to be denied with respect to their requests for prospective relief from the denial of due process to challenge their "indicated" statuses.

### b.     Plaintiff Collier

### i.     What Process is Due

Defendants allege that Plaintiff Collier did not have a constitutional right to a pre-deprivation administrative hearing because she did not have a property interest in employment, and that, sometime after her employment was terminated the second time, she was provided with a post-deprivation hearing.  *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1982) ("[T]he State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement."); *see also Campbell*, 741 F.2d at 1345 (noting that, in cases where publication of stigmatizing material implicates only a liberty interest, "the hearing need not take place prior to [the plaintiff's] termination or to the publication of related information adverse to [the plaintiff's] interests").

The amended complaint does not include allegations that would support the inference that Plaintiff Collier was deprived of a constitutionally protected property interest.  For example, the amended complaint does not contain allegations that Plaintiff Collier was a tenured teacher, or that she lost her teacher

certification as a result of the disclosure of her "indicated" status. *See Logan*, 455 U.S. at 430 (holding that "the hallmark" of a property interest is "an individual entitlement grounded in state law, which cannot be removed except 'for cause'"); *Foster v. Blount Cty. Bd. of Ed.*, 340 So. 2d 751, 752 (Ala. 1976) ("Under Alabama law, it is not disputed that a nontenured teacher has no right, statutory or otherwise, to be re-employed."). Further, although Plaintiff Collier alleges that her right to a pre-deprivation CA/N administrative hearing arose out of Alabama statutory law and DHR regulations and policies, she does not contend (or at least does not provide any substantive legal argument and supporting authority) that Alabama statutory law and DHR regulations and policies conferred on Plaintiff Collier a *property* interest in the right to a CA/N administrative hearing.

Because hearings in cases involving only a liberty interest exist to allow the plaintiff to clear her name, the hearing "need not" take place prior to publication of information adverse to the plaintiff's interest. *Campbell*, 741 F.2d at 1345. There is, however, no prohibition on holding the name-clearing hearing before publication of the adverse information. The CA/N hearing was the only hearing available for Plaintiff Collier to clear her name, and, under Alabama law, she was only entitled to request the CA/N hearing within ten days of receipt of notice of the "indicated" disposition. Ala. Admin. Code r. 660-34-5-.08(4). Despite requesting a hearing, she was instead afforded only an administrative record review.

Therefore, at the time Plaintiff Collier was denied a CA/N hearing (and/or at the time her "indicated" status became final upon conclusion of the record review), she was deprived of her only opportunity for a constitutionally adequate name-clearing hearing. As Defendants point out, years later with the assistance of an attorney and the filing of this action, Plaintiff Collier eventually convinced DHR to correct the due process deprivation. However, DHR's later correction of the due process deprivation does not erase the injuries Collier sustained on two occasions when DHR disclosed her "indicated" status to employers while she being denied a hearing to clear her name.[41]

Under the circumstances, Plaintiff Collier has alleged that she was deprived of her due process right to notice and an opportunity to be heard.

### ii. *Supervisor Liability of Defendants Buckner and Mashego*

Defendants Buckner and Mashego argue that they cannot be held responsible for Plaintiffs' § 1983 claims for monetary relief because supervisor liability only exists if the supervisor personally participated in the alleged constitutional violation or if there is a causal connection between the supervising official's actions and the alleged constitutional deprivation (as, for example, when policies or procedures personally propounded by the supervisor result in deliberate

---

[41] Alternatively, at the very least, after the first time DHR disclosed Plaintiff Collier's "indicated" status that cost her one job, DHR did not afford her a hearing. Instead, Plaintiff Collier continued to be denied a post-deprivation hearing until years later, after DHR *again* disclosed her status, causing her to lose a second job. (Doc. # 28 at ¶ 4.)

indifference to a plaintiff's due process rights). *Braddy v. Fla. Dep't of Labor & Emp't Sec*., 133 F.3d 797, 801 (11th Cir. 1998); *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991).

The facts asserted in Plaintiff Collier's amended complaint are sufficient to support her contention that policies personally propounded by Defendants Buckner and Mashego resulted in deliberate indifference to Plaintiff Collier's right to a hearing and ultimately caused her to lose two jobs. Plaintiff Collier alleges that she was constitutionally entitled to a due process hearing, that she requested and was denied a hearing, and that she was prevented from obtaining the hearing because her hearing request was not transmitted to the Office of Administrative Hearings. Without the failure to schedule a hearing, and/or without the failure of Defendants Matt and Henderson to forward the hearing request, the "indicated" disposition would not have been on the Central Registry and would not have twice been disclosed to Plaintiff Collier's employers, proximately causing them to terminate her employment. Further, Plaintiff Collier alleges that the failure to forward the hearing request and/or failure to schedule the hearing resulted from policies personally propounded by Defendants Buckner and Mashego.

Thus, Plaintiff Collier has alleged sufficient facts to establish a causal connection between the alleged constitutional deprivation and the actions of Defendants Buckner and Mashego. The motion to dismiss is due to be denied as to

Plaintiff Collier's § 1983 monetary damages claim against Defendants Buckner and Mashego for propounding policies that deprived her of a hearing.

**2.  *Policy of Informing Those Requesting Hearings that They Are Only Entitled to a Record Review; Policy of Failing to Provide Information Regarding Methods For Challenging DHR Findings***

Plaintiffs allege that Defendants Buckner and Mashego have propounded policies whereby, upon DHR's receipt of a request for a hearing, DHR does not inform the requestor of the proper method for contesting an "indicated" status and, instead, "systematically inform[s requestors] that they are only entitled to a 'record review.'" (Doc. # 28 at ¶ 87.ii.) However, despite the alleged deficiencies in the notice of available hearing procedures, Plaintiffs Collier, Alexander, and R.L.P. all requested hearings.[42] Therefore, the alleged facts do not support the inference that DHR's policy of not advising them of a right to a hearing proximately caused their injuries or poses a threat of a future injury to them. (Doc. # 28 at ¶¶ 2, 22-25, 30-32.)

Accordingly, with respect to allegations that DHR had a policy of

---

[42] Plaintiffs Alexander and Collier allege that they specifically requested a "hearing." R.L.P. does not state whether he specifically requested a hearing. However, it is undisputed that he received an administrative record review, which is only available upon request for review of an "indicated" disposition, and which was the only review procedure available to him. Ala. Admin. Code r. 6-5-34-.08(4). *Cf.* Ala. Admin. Code r. 660-1-5-.03 ("A hearing request is any clear written statement to the State Department or County Department that the aggrieved person wants the opportunity to present the case to a higher authority."). Further, because an administrative record review was the only available review procedure, Plaintiffs Alexander and R.L.P. do not allege facts from which it could be reasonably inferred that there was some other hearing procedure available that would have been afforded them if only they had known about and specifically requested it.

misinforming persons entitled to hearings that they were entitled only to a record review, Count III is due to be dismissed with prejudice as to Plaintiffs Collier, Alexander, and R.L.P. for failure to state a claim upon which relief can be granted and for failure to comply with the order to amend. *Twombly*, 550 U.S. at 570 (holding that, to survive Rule 12(b)(6) scrutiny, a complaint must contain "enough facts to state a claim to relief that is plausible on its face").

Nothing said here should be taken as a ruling on the admissibility of relevant and probative evidence of DHR practices.

### 3. *Introduction of Evidence of Dispositions in Juvenile and Family Courts*

Plaintiffs allege that, pursuant to policies maintained by Defendants Buckner and Mashego, "DHR routinely introduces evidence of the 'indicated' and 'not indicated' dispositions in cases brought before the juvenile/family courts and other [c]ourts of this State." (Doc. # 28 at ¶ 87(v).) However, no Plaintiff alleges specific facts showing that he or she was or will be injured by in-court disclosure of an "indicated" or "not indicated" disposition.[43] Further, the amended complaint fails to identify specific conduct by any specific Defendant as a cause of any particular routine in-court disclosure of a DHR disposition.

---

[43] Plaintiff Collier alleges that, at some point, her "indicated" status was disclosed to the Shelby County juvenile court. (Doc. # 28 at ¶ 28.) She asserts no other facts with respect to this allegation, including the identity of the person making the disclosure, the circumstances of the disclosure, the identity of the recipients of the disclosure, or the existence or substance of any injury suffered as a result of the disclosure.

Accordingly, this claim is due to be dismissed with prejudice for failure to state a claim upon which relief can be granted and for failure to comply with the order to amend. (Doc. # 27 at 9-10 ¶¶(e.)-(g.).)

### 4. *Failure to Establish Adequate Expungement Procedures*

Plaintiffs allege that "DHR has failed to establish procedures allowing for the prompt expungement of names and information from the Central Registry." (Doc. # 28 at ¶ 87.ix.) The amended complaint fails to identify specific conduct by any specific Defendant as a cause of any insufficiency in the expungement procedures. No Plaintiff alleges that he or she was or is being injured by a thwarted attempt to obtain expungement, and no facts are provided to show how or why the existing expungement procedures[44] are inadequate for or unavailable to any particular Plaintiff. Accordingly, as to Plaintiff Collier's claims for money damages and as to Plaintiff Alexander's and Plaintiff R.L.P.'s request for prospective relief to challenge "indicated" statuses, this claim is due to be dismissed with prejudice for failure to state a claim upon which relief can be granted and for failure to comply with the order to amend.

### 5. *Failure to Provide Adequate Training and Supervision in Investigation and Intitial Dispositions of Child Abuse Reports*

Plaintiffs allege that Defendants Buckner and Mashego "failed to provide

---

[44] *See* Ala. Code 1975 § 26-14-6 (conditions for expungement of a "not indicated" listing); Ala. Admin. Code r. 660-5-34-.09(5)(i)-(j) (procedures for expungement of "indicated" and "not indicated" listings).

adequate training and supervision to those agents and employees of the State and County [DHR] who are responsible for the investigation of child abuse/neglect reports and who are responsible for making disposition of those reports, and who are responsible for informing persons of their rights following an 'indicated disposition.'" (Doc. # 28 at ¶ 88.)

The amended complaint's factual allegations of wrongful conduct pertain only to denial of due process to challenge "indicated" statuses *after* DHR investigations concluded with the initial "indicated" disposition. The amended complaint[45] contains no allegations that any DHR workers (including any of the Defendants) acted improperly in *investigating* child abuse reports or in *making the initial determination* that child abuse was "indicated."

Plaintiff Collier requested a hearing despite DHR's alleged failure to inform her of her rights; therefore, she has not alleged facts that support an inference that she personally was injured by any failure to train DHR employees in notifying persons of their rights following an "indicated" disposition. Further, there is no basis to conclude that Plaintiffs Alexander or R.L.P., who may never be subject to another investigation and who are already aware of their hearing rights, would

---

[45] Footnote 6 of this Memorandum Opinion contains information regarding errors in the investigation and initial "indicated" determination as to Plaintiff Collier. However, that information was not gleaned from the complaint, but from an exhibit attached to Plaintiffs' response to the motion to dismiss. (Doc. # 33-1 at 8-22.) Therefore, the information is not considered in determining whether the amended complaint states a claim upon which relief can be granted.

personally benefit from prospective relief requiring DHR to improve policies and procedures for training and supervision of DHR workers investigating abuse reports, or for informing persons of their rights to a hearing following an "indicated" disposition.

Accordingly, this claim is due to be dismissed with prejudice for failure to state a claim upon which relief can be granted and for failure to comply with the order to amend.

### 6.    *Failure of DHR Social Workers to Forward Hearing Requests*

Plaintiffs allege that Defendants Matt, Henderson, Haag, Walter, and Dollar failed to transmit hearing requests to the Office of Administrative Hearings. (Doc. # 28 at ¶ 89.) As explained in Section IV.B.2.i.-ii., all claims against Defendants Haag, Walter, and Dollar are due to be dismissed for lack of jurisdiction and failure to state a claim upon which relief can be granted. Defendants Matt and Henderson are accused of personally failing to forward Plaintiff Collier's hearing requests. Plaintiff Collier has alleged facts sufficient to support a finding she was prevented from obtaining a hearing because Defendants Matt and Henderson did not transmit her hearing request to the Office of Administrative Hearings. Plaintiff Collier also alleges facts from which it could reasonably be inferred that Defendants Matt and Henderson knew or should have known to transmit the hearing request because she was a teacher entitled to a CA/N hearing under

Alabama statutory law and DHR regulations and policies, and because the CA/N hearing was the only name-clearing procedure available to her that would satisfy the due process requirement of an opportunity to be heard.

Accordingly, Plaintiff Collier's § 1983 claim for monetary damages against Defendants Matt and Henderson for failing to forward her hearing request survives the motion to dismiss.

## H.   Count IV

Count IV is entitled "Claim For Money Damages Pursuant To 42 U.S.C. § 1983."   Despite the caption, Count IV does not include a specific allegation limiting the form of relief sought to monetary damages, and it is followed by a "Prayer for Relief on [All] Federal Claims" that includes requests for monetary, injunctive, and declaratory relief.   Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."); *Scharff v. Wyeth*, No. 2:10-CV-220-WKW, 2011 WL 3320501, at *16 (M.D. Ala. Aug. 2, 2011) (holding that, in construing a pleading, "[s]ubstance, not labels, governs"); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1286 (3d ed. 2004) ("A pleading will be judged by the quality of its substance rather than according to its form or label and, if possible, it will be construed to give effect to all its averments.").

Defendants argue that Count IV is due to be dismissed as duplicative of Count III.   In Count IV, Plaintiffs Collier, Alexander, Lowrey, and R.L.P. allege

that their hearing requests were "denied, refused, and/or ignored" because Defendants Buckner, Mashego, Matt, Henderson, Haag, Walter, and Dollar "failed to carry out duties and responsibilities imposed on them by statute, rule, regulation, and policy." (Doc. # 28 at ¶97.) Like Count III, Count IV arises out of the deprivation of Plaintiffs' constitutionally protected rights to a hearing. As to prospective relief, Count IV does not contain any allegation or basis for declaratory or injunctive relief that was not already covered by Count III. Therefore, as to claims for prospective relief, Count IV is due to be dismissed as duplicative of Count III.

Further, as explained in Section IV.B.1, Section IV.B.2.i., and Section IV.B.3., except for Plaintiff Collier's claims for monetary damages against Defendants Buckner, Mashego, Matt, and Henderson, all claims for monetary damages are due to be dismissed on grounds of lack of jurisdiction and/or failure to state a claim upon which relief can be granted. With respect to Plaintiff Collier's claim for monetary damages against Defendants Buckner, Mashego, Matt, and Henderson, Count IV differs materially from Count III because Count IV alleges that Defendants Buckner, Mashego, Matt, and Henderson "denied, refused, and/or ignored" Plaintiff Collier's hearing requests. In contrast, Count III seeks relief (1) against Defendants Buckner and Mashego for personally *maintaining policies and procedures* that proximately led to the denial of the hearing requests (either by one

or more of the named Defendants or by unnamed DHR personnel); and (2) against Defendants Matt and Henderson for *failing to forward* Plaintiff Collier's hearing request.

Accordingly, Count IV is due to be dismissed except as Plaintiff Collier's claim for monetary relief against Defendants Buckner, Mashego, Matt, and Henderson.

## I.   Qualified Immunity and Plaintiff Collier's § 1983 Claims for Monetary Relief

Defendants Mashego and Matt[46] argue that they are entitled to qualified immunity on Plaintiff Collier's[47] § 1983 claims for monetary damages.[48]  (Doc. # 31 at 20.)  In § 1983 actions, the doctrine of qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818

[46] Defendant Dollar also asserts a qualified immunity defense.  However, for the reasons stated in Section IV.B.2.i., all claims for monetary relief against Defendant Dollar are due to be dismissed for lack of standing.

[47] As explained in Section IV.B.1., Section IV.B.2.i., and Section IV.B.2.iii., except for Plaintiff Collier's claims for monetary damages against Defendants Buckner, Mashego, Matt, and Henderson, all claims for monetary damages are due to be dismissed on grounds of lack of jurisdiction, res judicata, and/or failure to state a claim upon which relief can be granted.

[48] Qualified immunity is inapplicable to claims seeking prospective relief.  *Ratliff v. DeKalb Cnty., Ga.*, 62 F.3d 338, 340 n.4 (11th Cir. 1995) ("Because qualified immunity is only a defense to personal liability for monetary awards resulting from government officials performing discretionary functions, qualified immunity may not be effectively asserted as a defense to a claim for declaratory or injunctive relief.").

(1982)).

"[T]o receive qualified immunity, the public official must first prove that [s]he was acting within the scope of h[er] discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). For purposes of qualified immunity analysis, a defendant was performing within the scope of her discretionary authority if she "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within h[er] power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). To prove that they acted within their discretionary authority, Defendants rely on the generic argument that social workers engage in discretionary acts when conducting a child abuse investigation and when reaching the initial conclusion that child abuse is "indicated." (Doc. # 31 at 25-29.) However, Plaintiff Collier does not seek to hold Defendants liable for their conduct in investigating child abuse allegations or in initially determining that child abuse was "indicated." Rather, Plaintiff Collier's § 1983 claims for monetary relief are based on her claims that Defendants, by various actions and omissions, *prevented her from obtaining her constitutional right to a hearing* to contest the "indicated" disposition *after* DHR workers investigated and assigned the initial "indicated" disposition. Because Defendants' discretionary function arguments are wholly inapposite to the conduct underlying Plaintiff Collier's

claims for monetary damages, Defendants have not met their burden to demonstrate that they were "acting within the scope of [their] discretionary authority when the allegedly wrongful acts occurred." *Lee*, 284 F.3d at 1194.

Only if "the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate" by showing that the defendant's actions violated a clearly established constitutional right.[49] *Lee*, 284 F.3d at 1194. A constitutional right is "clearly established" if, at the time of the defendant's actions, the law gave fair warning a reasonable officer in the defendant's position that those acts violated constitutional rights. *Jones v. Fransen*, 857 F.3d 843, 851-52 (11th Cir. 2017). Fair warning can be established by binding case law from similar cases or by less similar but obviously applicable cases, or when the right violated is so obviously at the core of the constitutional provision at issue that no case law should be necessary. *Id.*

Though Defendants are not entitled to qualified immunity because they did not meet their burden to show that they were engaged in a discretionary function, the court notes that the amended complaint contains sufficient factual allegations to demonstrate that, in failing to forward the hearing request, Defendants Mashego and Matt violated Plaintiff Collier's clearly established constitutional right to a

---

[49] The two prongs of the qualified-immunity analysis (the merits of the underlying constitutional issue and whether the alleged constitutional right was "clearly established") may be considered in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

name-clearing hearing. It is well-established (and not disputed by Defendants) that Plaintiff Collier was entitled to a name-clearing hearing that included "an opportunity to support h[er] allegations and clear h[er] name by argument however brief, and, if need be, by proof, however informal." *Campbell*, 741 F.2d at 1344-45 (citation and internal quotation marks omitted). Although, where liberty interests are concerned, the hearing is not *required* to be held prior to publication of information adverse to the plaintiff's interest, *Campbell*, 741 F.2d at 1345, there is no requirement that it *cannot* be held prior to disclosure. In Alabama, the only hearing that would have satisfied the basic due process requirements of an opportunity to be heard was a CA/N hearing, which was only available upon timely written request *before* the listing and disclosure of the "indicated" status. *See* Ala. Admin. Code r. 660-5-34-.08(4) (providing that, upon receipt of notice of an "indicated" status an individual has only ten days to request a hearing or administrative record review). Plaintiff Collier alleges that she requested a CA/N hearing and was denied one. Instead, she was given an administrative record review which does not satisfy the due process requirement of an opportunity for the affected party to present evidence and argument.

Under the circumstances and well-established law,[50] the amended complaint

---

[50] *See Campbell*, 741 F.2d at 1344 (holding that, when disclosure of stigmatizing information implicates only a liberty interest, the affected party is entitled to notice and an opportunity to be heard); *see also* Ala. Code 1975 § 26-14-7.1 (providing that certain persons,

is sufficient to support the allegation that Defendants Mashego and Matt were on notice that Plaintiff Collier was entitled to an opportunity to be heard, and that failure to forward the hearing request and/or denying, refusing, or ignoring the request would deprive Plaintiff Collier of her one available opportunity for a due process hearing to clear her name. Instead, Plaintiff Collier was merely given an administrative record review, which does not satisfy the due process requirements of a name-clearing hearing because it does not provide the affected party with any opportunity, not even an informal one, to tell her side of the story by presenting argument and proof. *Campbell*, 741 F.2d at 134.

As Defendants point out, after years of persistence and the assistance of an attorney, Plaintiff Collier was able to eventually convince DHR to reverse course and correct the errors of Defendants Mashego and Matt by giving her an administrative hearing, at which she prevailed. However, the late-provided hearing does not negate that, during the time period when the actions of Defendants

including certified teachers, "shall be granted the following due process rights by [DHR]", including the opportunity to request and receive a hearing prior to disclosure of an "indicated" disposition to employers, the right to view and copy DHR's evidence, the right to attend the hearing, to present evidence and witnesses at the hearing, etc.); Ala. Admin. Code r. 660-5-34-.08 (providing teachers and employees of licensed day care facilities with due process rights to a CA/N hearing that "is fact finding in nature" and that "must be offered" in the event of an "indicated" disposition); Ala. Admin. Code r 660-5-34-.08(6) (providing that, "except as indicated below, the hearing procedures outlined in Chapter 660-1-5 shall apply to [CA/N] hearings"); Ala. Admin. Code r. 660-1-5-.01 ("'Due process' as used in these rules denotes the rights of a person affected by an agency decision to present a complaint at a hearing and to be heard, by testimony or otherwise, and to have the right of controverting, by proof, every material fact which bears on the questions of the individual's rights in the matter involved without undue delay or hindrance.").

Mashego and Matt deprived Plaintiff Collier of her due process right clear her name, she was injured twice (once in 2012 and again in 2014) by DHR's disclosure of her "indicated" disposition.

Therefore, the motion to dismiss is due to be denied with respect to Defendants' qualified immunity defense to Plaintiff Collier's remaining § 1983 claims for monetary relief.

## J.     Count V- State Law Negligence and Wantonness Claims

Count V is a state law claim for negligence and wantonness.  In it, all Plaintiffs seek compensatory and punitive damages from all Defendants for breach of alleged duties to give notice to persons accused of child abuse of the right to a hearing, to inform the Office of Administrative Hearings that an "indicated disposition" was made at the county level, to withhold Plaintiffs' names and information from the Central Registry until the conclusion of a post-deprivation hearing, and to forward Plaintiffs' hearing requests to the Office of Administrative Hearings.  In accordance with Section IV.B.2.i., all claims for monetary damages except Plaintiff Collier's are due to be dismissed for lack of jurisdiction and failure to state a claim upon which relief can be granted.  Therefore, the court will limit its consideration of Count V to whether Plaintiff Collier has stated a claim upon which relief could be granted.

Because Plaintiff Collier was aware of her right to a hearing and requested

one despite DHR's lack of notice of her right to do so, it cannot reasonably be inferred from the amended complaint that she was injured because DHR failed to notify her of her right to a hearing or of her right to request one. Further, Plaintiff Collier has also failed to allege any facts from which it can be inferred that she was injured by any Defendant's failure to automatically, and before receiving a request for a hearing, inform the Office of Administrative Hearings that an "indicated" disposition was made at the county level. Accordingly, Count V does not state a claim against any Defendant for failing to notify Plaintiff Collier of the right to a hearing or for failing to automatically alert the Office of Administrative Hearings of an "indicated" disposition.

The facts alleged in the amended complaint do support the conclusion that *someone* at DHR listed Plaintiff Collier's "indicated" disposition on the Central Registry before DHR afforded her a hearing. However, there are no allegations that any of the named Defendants personally listed Plaintiff Collier's "indicated" status on the statewide Central Registry, and there are no supervisory or vicarious liability theories asserted in Count V against any Defendants, including Defendants Buckner or Mashego. Plaintiff Collier has not demonstrated that Defendants owed her a legal duty not to place her "indicated" disposition on the Central Registry prior to an administrative hearing—only that they had a duty to provide her with a hearing to "clear her name" in conjunction with the release of the "indicated"

status to third parties.  *Campbell*, 741 F.2d at 1344 (noting that where only a liberty interest is implicated, the plaintiff must be afforded an informal hearing to "clear his [or her] name", which need not occur prior to the disclosure to third parties of information adverse to the plaintiff); *see also* Ala. Admin. Code r. 660-5-34-.09(e)(1)(ii),(v) (providing that, except in emergency circumstances not applicable in this case, an "indicated" disposition may be released to employers only after "final disposition as determined by due process").  Accordingly, Count V does not state a claim against any of the Defendants for prematurely placing Plaintiff Collier's "indicated" status on the Central Registry.

Plaintiff Collier does supply sufficient allegations to reasonably place Defendants Matt and Henderson[51] on notice of a claim for negligence and wantonness in failing to forward Plaintiff Collier's hearing request.  Defendants argue that they are entitled to state agent immunity on Plaintiff Collier's claim. *See Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000) (setting forth Alabama law regarding state agent immunity).  Defendants appear to argue that state agent immunity always bars liability on negligence and wantonness claims.   However, the cases cited by Defendants do not so hold.  *Cf. Ex parte Lawley*, 38 So. 3d 41, 48 (Ala. 2009) (holding that an exception to state agent immunity applied to claims

---

[51] Plaintiff Collier does not allege that Defendants Buckner and Mashego personally failed to forward the request, and she asserts no supervisory or vicarious liability theories in Count V.

of negligence and wantonness).

Alabama law applies a burden-shifting approach to state agent immunity defense. First the defendant must demonstrate that the plaintiff's claims arise from a function that would entitle the state agent to immunity. The arguments of Defendants Matt and Henderson regarding state agent immunity are merely general statements of law and do not specifically address whether forwarding Plaintiff Collier's hearing request was a function that would entitle them to immunity. (Doc. # 31 at 55-62.) Moreover, failing to forward the hearing request does not appear to fall in any of the categories that would entitle them to state agent immunity, such as exercising judgment in administration of a department or discharging duties prescribed by statute or regulation in the manner so prescribed. *Hollis v. City of Brighton*, 950 So. 2d 300, 307 (Ala. 2006) Accordingly, Defendants Matt and Henderson have not met their burden to show that they were engaged in a function that would entitle them to state agent immunity.

Even if Defendants Matt and Henderson could demonstrate that their failure to forward Plaintiff Collier's hearing request arose from a function that entitled them to immunity, which they have not done, they still would not be entitled to state agent immunity if they acted "'willfully, maliciously, fraudulently, in bad faith, beyond [their] authority, or under a mistaken interpretation of the law.'" *Ex parte Harris*, 216 So. 3d 1201, 1209 (Ala. 2016) (quoting *Cranman*, 792 So. 2d at

405).  In her written hearing request,[52] Plaintiff Collier specifically informed DHR that she was a teacher.  Because Plaintiff Collier was a teacher, established Alabama law entitled her to a pre-deprivation CA/N hearing before the Office of Administrative Hearings.  Ala. Code § 41-22-12(1); Ala. Code 1975 § 26-14-7.1; Ala. Administrative Code r. 660-5-34-.08(1)-(2),(4),(6).  Further, as explained in Section IV.G.1.b.i.-ii., Section IV.G.6, and Section IV.I., Plaintiff Collier's right to a name-clearing hearing was clearly established, and, when her opportunity for a CA/N hearing was thwarted, so was her only available opportunity for a name-clearing hearing.  *Campbell*, 741 F.2d at 1344 (noting that, where a liberty interest is implicated by disclosure of adverse information, the affected party must be afforded a hearing to "clear his [or her] name").

Therefore, construing the allegations of the amended complaint in the light most favorable to Plaintiff Collier, the court finds that she has asserted facts[53] from

---

[52]  Whether or not Plaintiff Collier specifically mentioned the Office of Administrative Hearings in her hearing request, the request was sufficient to invoke her right to review of her "indicated" status and to require submission of her request to a hearing officer.  Admin. Code r. 660-1-5-.03 ("A hearing request is any clear written statement to the State Department or County Department that the aggrieved person wants the opportunity to present the case to a higher authority."); Admin. Code r. 660-1-5-.04 (providing that it is the function of the hearing officer to "notify the aggrieved person or his representative whether or not the [hearing] request is accepted and, if not, why").

[53] Footnote 6 of this Memorandum Opinion contains facts that, if true, could reasonably support the inference that, to conceal a badly botched investigation, Plaintiffs Matt and Henderson had motive to act willfully, maliciously, in bad faith, or beyond their authority in failing to forward the hearing request.  However, because the facts set forth in footnote 6 were not contained in the complaint or relied upon by Plaintiff Collier with respect to state law immunity, they are not relied on in the analysis here.

which it could reasonably be inferred that (1) Defendants Matt and Henderson knew or should have known that, under Alabama law and DHR regulations, Plaintiff Collier "must", by right, be afforded a CA/N hearing upon request, Ala. Code § 26-14-7.1; Ala. Admin. Code r. 660-5-34-.08(3), that Plaintiff Collier had invoked that right, and that they had a duty to forward the hearing request; and (2) despite that knowledge, they knowingly failed to forward the hearing request "willfully, maliciously, fraudulently, in bad faith, beyond [their] authority," or, at the very least, "under a mistaken interpretation of the law." *Harris*, 216 So. 3d at 1209. *See* Ala. Admin. Code r. 660-1-5-.05(e) (providing that it is the function of the hearing officer to deny or dismiss a hearing request in writing if the person requesting the hearing "is not entitled by law to be given an opportunity for a hearing"); *see also* Admin. Code r. 660-5-34-.08(6) (providing that, except as otherwise provided, an administrative hearing to review an "indicated" status is conducted according to "the hearing procedures outlined in Chapter 660-1-5").

Accordingly, as to Count V, the motion to dismiss is due to be denied with respect to the state agent immunity defense of Defendants Matt and Henderson to Plaintiff Collier's negligence and wantonness claim for monetary damages for failure to forward the hearing request. In all other respects, Count V is due to be dismissed.

## K.    Count VI

Count VI is a claim for compensatory and punitive damages by all Plaintiffs against all Defendants for fraudulent suppression of the material fact that Plaintiffs were entitled to a hearing.  As explained in Section IV.B.1, Section IV.B.2.i., and Section IV.B.3., all Plaintiffs' claims for monetary damages except for Plaintiff Collier's are due to be dismissed for lack of jurisdiction and failure to state a claim upon which relief can be granted.  Plaintiff Collier requested a hearing despite DHR's failure to notify her of her right to do so; thus, she has failed to allege facts from which it can reasonably be concluded that the failure to notify her of the right to a hearing caused her any injury.  Accordingly, all Plaintiff Collier's claims under Count VI are due to be dismissed with prejudice for failure to comply with the requirements of notice pleading and the order to amend, and, because she alleges fraud, for failure to comply with Rule 9(b) of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").  Therefore, Count VI is due to be dismissed in its entirety.

## L.    Count VII

Count VII is a state law claim by all Plaintiffs against Defendants Buckner, Mashego, and Dollar in their individual capacities for negligent training, supervision, and retention.  Count VII, which seeks only monetary damages, is due

to be dismissed as to Plaintiffs Alexander, Lowrey, R.L.P., Burroughs, and Saunders because, as explained in Section IV.B.2.i. and Section IV.B.3, those Plaintiffs' claims for monetary damages are subject to dismissal for lack of jurisdiction and failure to state a claim upon which relief can be granted.

With respect to negligent retention, Plaintiff Collier alleges that Defendants Buckner and Mashego[54] negligently retained employees who were known to have violated state and federal and DHR rules, regulations, and policies. Nowhere in the amended complaint is there a factual allegation that Plaintiff Collier suffered an injury at the hands of an improperly retained DHR employee who was previously known to have a tendency to violate laws, rules, regulations, and procedures.[55] *See Voyager Ins. Cos. v. Whitson*, 867 So. 2d 1065, 1073 (Ala. 2003) (holding that, to prevail on a claim for negligent hiring and retention, plaintiff must show that he or she was tortiously injured by the employee's incompetent act, and that, prior to the employee's wrongful act, the employer knew or should have known of the

---

[54] Count VII also includes an allegation that Defendant Dollar participated in negligent training, supervision, and retention. However, Defendant Dollar is a Jefferson County DHR supervisor, and Plaintiff Collier's claim pertains to a Shelby County DHR investigation and a hearing request submitted to Shelby County DHR. Therefore, any claim under Count VII by Plaintiff Collier against Defendant Dollar lacks sufficient supporting factual allegations.

[55] Information contained in footnote 6 of this Memorandum Opinion demonstrates numerous wanton errors in the investigation of Plaintiff Collier by a DHR worker who was fired for mishandling her cases. That information was not gleaned from the complaint, but from a document attached to Plaintiffs' response to the motion to dismiss. (Doc. # 33-1 at 8-22.) That document is dated August 24, 2015. If Plaintiff Collier had intended to allege that she was injured as a result of negligent retention, training, or supervision of that employee, she could have included the necessary factual allegations in her amended complaint. She did not.

employee's incompetence).

To prevail on a claim of negligent training and supervision, Plaintiff Collier must demonstrate that she was harmed by the tortious conduct of one or more improperly supervised or trained DHR employees. *Voyager*, 867 So. 2d at 1073. In light of Plaintiff Collier's state law claim against Defendants Matt and Henderson for failing to forward her hearing request in violation of Alabama law and DHR regulations, and in light of the allegation in Count VII that Defendants Buckner and Mashego failed to train and supervise the DHR employees who violated Alabama law and DHR regulations, it is reasonable to interpret Count VII as presenting a claim that Defendant Matt's and Defendant Henderson's failures to forward the hearing request were the result of improper training or supervision by Defendants Buckner and/or Mashego.

Defendants Buckner and Mashego assert the defense of state law immunity. A state agent is not entitled to state law immunity if the state agent acted "'willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.'"[56] *Harris*, 216 So. 3d at 1209 (quoting

---

[56] Alabama law applies a burden shifting analysis to claims of qualified immunity. Before the burden shifts to the plaintiff to show that the defendant acted "'willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law,'" *Harris*, 216 So. 3d at 1209, the defendant must show that she was engaged in a function that would entitle her to state agent immunity. Exercising judgment in hiring, firing, and supervising personnel, as well as other decisions made in the exercise of judgment in the administration of a state department or agency, are functions that qualify for state agent immunity. *Ex parte Ingram*, 229 So. 3d 220, 228 (Ala. 2017)

*Cranman*, 792 So. 2d at 405). It is reasonable to infer from the allegations in Count VII that Defendants Buckner and Mashego knew or should have known that DHR's obligations regarding teachers' written requests for administrative hearings, but nevertheless neglected their duty to ensure that DHR employees were adequately trained and supervised regarding the handling of teachers' hearing requests. Further, the allegations in Count VII support the inference that Defendants Buckner and Mashego failed to fulfill their duties when they knew of DHR employees' wrongful conduct and that DHR training and supervision policies were "inadequate to fulfill [DHR's] obligations to protect the public from unconstitutional and unlawful practices by DHR employees and agents." (Doc. # 28 at ¶116.) Accordingly, Count VII contains allegations sufficient to support the inference that, in failing to train and supervise DHR employees regarding their responsibilities in handling teachers' hearing requests, Defendants Buckner and Mashego acted "willfully, maliciously, fraudulently, in bad faith, beyond [their] authority, or under a mistaken interpretation of the law." *Harris*, 216 So. 3d at 1209.

Accordingly, Count VII is due to be dismissed except as to Plaintiff Collier's claims for monetary relief against Defendants Buckner and Mashego for negligent training and supervision of DHR employees regarding the responsibility to forward CA/N requests to the Office of Administrative Hearings.

**M.** **Counts VIII and IX**

Count VIII is a state law claim for defamation by Plaintiffs Collier, Alexander, Lowrey, and R.L.P. for wrongfully disclosing their "indicated" dispositions. Count IX is a claim by Plaintiffs Collier, Alexander, Lowrey, and R.L.P. for libel and slander for wrongful disclosure of their "indicated" dispositions. For facts, Plaintiffs rely primarily on incorporation of the preceding 118 paragraphs of the amended complaint. Plaintiffs were ordered that, "with respect to each count, the complaint must clearly and specifically identify each relevant Defendant's alleged acts or omissions in a manner sufficient for each Defendant to know how he or she is alleged to be personally involved with the claim and the factual and legal grounds upon which he or she is alleged to be liable to which Plaintiff." (Doc. # 27 at 10 ¶ f.) Plaintiffs were also specifically ordered not to rely on incorporation of facts by reference so that the court would be able to discern which facts supported which claims. (Doc. # 27.)

As to Plaintiffs Alexander, Lowrey, R.L.P., Burroughs, and Saunders, Counts VIII and IX are due to be dismissed because, as discussed in Sections IV.B.2.i. and IV.B.3., those Plaintiffs' claims for monetary damages are due to be dismissed for lack of jurisdiction and failure to state a claim upon which relief can be granted.

Although Plaintiff Collier alleges that her "indicated" status was

92

wrongfully[57] disclosed to her employers, she does not allege that any particular Defendant was the person who disclosed the "indicated" status. The amended complaint contains no other allegation that any Defendant made any other defamatory, libelous, or slanderous statements that Plaintiff Collier was guilty of child abuse. Counts VIII and IX contain no allegations to support liability of Plaintiffs Buckner or Mashego on grounds of supervisory liability or any other theory. Therefore, as to Plaintiff Collier, Counts VIII and IX are due to be dismissed with prejudice for failure to allege facts sufficient to state a claim upon which relief can be granted, and for failure to comply with the order to amend.

## N. Count X

Count X is a state law claim for injunctive relief based on "the wrongful acts of Buckner and Mashego" as described (by incorporation) in the preceding 130 paragraphs of the amended complaint. (Doc. # 28 at ¶ 132.) Plaintiffs seek an injunction against the continued maintenance of their names on the Central Registry and an injunction requiring that they be afforded a hearing to challenge their "indicated" dispositions.

An injunction is a remedy, not a separate claim or cause of action. *See Martin v. Patterson*, 975 So. 2d 984, 990 (Ala. Civ. App. 2007) (noting that to

---

[57] *See* Ala. Code 1975 § 26-14-7.1 (providing that, with respect to persons employed by state-licensed, approved, or certified facilities, "[t]he employer of an alleged perpetrator shall not be notified of the investigator's conclusions prior to a hearing or its waiver").

obtain a permanent injunction, the movant must first prevail on the merits of the underlying claim).  The court construes Count X as a demand for injunctive relief with respect to Plaintiffs' state law claims.  As explained in Sections IV.B-D., Plaintiff Collier's claims for injunctive relief are moot, and all claims of Plaintiffs Alexander, Lowrey, R.L.P., Burroughs, and Saunders, except for Plaintiff Alexander's and Plaintiff R.L.P.'s claims for injunctive relief from disclosure of their "indicated" statuses, are due to be dismissed for lack of jurisdiction, failure to state a claim upon which relief can be granted, and/or on grounds of res judicata. Accordingly, the court will consider whether Plaintiff R.L.P.'s and Plaintiff Alexander's remaining state law claims for injunctive relief are subject to dismissal.

Count V is a claim for negligence and wantonness in failing to transmit Plaintiffs' hearing requests to the Office of Administrative Hearings, failing to inform the Office of Administrative Hearings of the existence of "indicated" dispositions, and failure to notify Plaintiffs of a right to a hearing.  Plaintiffs Alexander and R.L.P., who are aware of their right to a hearing, have not demonstrated that prospective relief directed at any of those particular allegedly wrongful acts would prevent future injury to them.  Count V also includes an allegation that Defendants have a duty to withhold the Plaintiffs' names and information from the Central Registry "prior to the conclusion of a . . . hearing."

(Doc. # 28 at ¶ 101.)  However, Plaintiffs Alexander and R.L.P. have not shown that Defendants owed them a duty to withhold their names or information from the Central Registry prior to the conclusion of a hearing, or that placing them on the Central Registry prior to the conclusion of the hearing creates a threat of injury. *See Campbell*, 741 F.2d at 1345 (holding that, "[i]n cases where a liberty interest arising from reputational damage is implicated," "the hearing need not take place prior to . . . the publication of . . . information adverse to [the plaintiff's] interests"); *see also* Ala. Admin. Code r. 660-5-34-.09(e)(1)(ii),(v) (providing that, except in emergency circumstances not applicable in this case, an "indicated" disposition may be released to employers only after "final disposition as determined by due process").

As to Count VI, for suppression of material fact, Plaintiffs Alexander and R.L.P., who are already aware of their right to a hearing, have failed to state any facts from which it could reasonably be concluded that DHR's past failure to disclose their right to a hearing poses a threat of future injury.  Count VII, for negligent hiring and negligent training and supervision, fails to assert facts from which it could reasonably be concluded that prospective relief requiring proper hiring, training, and supervision would prevent future injury to Defendant Alexander or R.L.P.  Counts VIII and IX, for defamation, libel, and slander, are not relevant to claims for prospective relief because those claims are based on

allegations of *past* defamatory, libelous, and slanderous statements.

Accordingly, the motion to dismiss is due to be granted as to all requests for injunctive relief on Plaintiffs' state law claims.

## V.    CONCLUSION

Accordingly, it is ORDERED:

1.    The motion to dismiss (Doc. # 31) is GRANTED IN PART and DENIED IN PART, and all claims are DISMISSED with the following exceptions, which are the only remaining claims:

    a.    Counts I and II, which are § 1983 claims, are DISMISSED.

    b.    Count III, a § 1983 claim, is DISMISSED as to all Plaintiffs and Defendants except as follows:

        i.    with respect to Defendants Buckner and Mashego in their official capacities, Count III remains as to Plaintiff Alexander's and Plaintiff R.L.P.'s claims for injunctive and declaratory relief on grounds that DHR policies and procedures prevent them from obtaining due process hearings to contest their "indicated" statuses;

        ii.    with respect to Defendants Buckner and Mashego in their individual capacities, Count III remains as to Plaintiff Collier's money damages claim that Defendants Buckner and Mashego

maintained policies and procedures that deprived her of a hearing to contest her "indicated" status; and

  iii. Count III remains as to Plaintiff Collier's money damages claims that Defendants Matt and Henderson, in their individual capacities, personally failed to forward Plaintiff Collier's hearing requests to the Office of Administrative Hearings.

c. Count IV, a § 1983 claim, is DISMISSED except as to Plaintiff Collier's claim for monetary relief against Defendants Buckner, Mashego, Matt, and Henderson in their individual capacities for denying, refusing, or ignoring Plaintiff Collier's hearing request.

d. Count V, a state law claim for negligence and wantonness, is DISMISSED, except as to Plaintiff Collier's state law money damages claim against Defendants Matt and Henderson in their individual capacities for failure to forward Plaintiff Collier's hearing request.

e. Count VII, a state law claim for negligent retention, supervision, and training, is DISMISSED except as to Plaintiff Collier's claim for monetary damages against Defendants Buckner and Mashego, in their individual capacities, for negligent supervision and training DHR employees the responsibility to forward CA/N hearing requests to the Office of Administrative Hearings.

f.     Counts VII and IX, state law claims for defamation, libel, and slander, are DISMISSED.

g.     Count X of the complaint, which is not a claim but a request for injunctive relief on Plaintiffs' state law claims, is DISMISSED.

2.     Because all claims of Plaintiffs Lowrey, Burroughs, and Saunders have been dismissed by this Order, the Clerk of the Court is DIRECTED to terminate Plaintiffs Lowrey, Burroughs, and Saunders as parties to this action.

3.     Because no remaining claims are asserted against Defendants Sara Haag, Katie Walter, and Toni Dollar, the Clerk of the Court is DIRECTED to terminate Defendants Sara Haag, Katie Walter, and Toni Dollar as parties to this action.

DONE this 27th day of March, 2018.

_____
              /s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE